VERDERY *et al. vs.* THE SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY, and *vice versa.*

1. Upon admitted or undisputed facts, the court may decide the question of title by prescription as matter of law, without submitting the same to the jury.
2. Wholly withdrawing from the jury, by the general charge, certain defences set up and relied upon by the defendant in ejectment, is equivalent to withdrawing all evidence relating to these defences, and this cures any error committed in admitting such evidence.
3. Whilst realty of which a debtor has had adverse and continuous possession under written color of title is in the hands of a receiver appointed by a court of equity at the instance of creditors, the statute of prescription continues to run in favor of such debtor's title against strangers to the pending litigation. The possession of the receiver may be tacked to that of the debtor, and to that of the purchaser of the premises at a sale made under a decree in the cause, to make out the full period of the prescriptive term.
4. Though no prescription works against the rights of an insane person so long as the insanity continues, yet different lucid intervals, amounting in the aggregate to as much as seven years may be put together, and the effect will be to bar the right of action.
5. The certificate of the ordinary to an exemplification of the proceedings on a commission of lunacy, showing that the papers exemplified are of file in his office, the exemplification is not inadmissible because it does not otherwise appear that the papers were filed, or because they were not recorded, or because no judgment was entered on the verdict which found that the person proceeded against was not a lunatic. Though there might have been other possible objections on which the exemplification should have been excluded, the specified objections were not well-taken.
6. Where the court gives in charge a written request, superadding

observations, a general exception to the matter superadded will not avail if any part of it be legal. Where part is legal and part illegal, the exception must distinguish.

7. Newly discovered evidence, if cumulative or immaterial, or if due diligence be lacking, will not justify the grant of a new trial.

8. There is enough evidence in favor of the verdict to uphold it, the presiding judge below being satisfied

September 16, 1889.

Practice. Title. Prescription. Charge of court. Eject-ment. Evidence. Receivers. Possession. Insanity. Statute of limitations. New trial. Before Judge ADAMS. Chatham superior court. June term, 1888.

On June 4, 1887, Charity C. Verdery, in her own right and as administratrix of the estate of George H. Conn, brought suit against the Savannah, Florida and Western Railway Company for the recovery of certain land with mesne profits. The defendant pleaded, in substance, that it was the lawful owner of the land sued for, holding same by virtue of its succession to, by pur-chase of, the rights, property, etc. of the Atlantic & Gulf Railroad Co.; that the lot of land sued for was sold to the Atlantic & Gulf Railroad Co. by Mrs. Char-lotte Conn, as executrix of G. M. Conn, and under the provisions of the will of G. M. Conn the executrix had the right to make such sale, Charity C. Verdery and G. H. Conn being the children of G. M. Conn and claim-ing under him; that said sale was made December 6th, 1866, and was a sale for value; that the land was bought in good faith; and that the defendant and those under whom it holds continued in public, exclusive, etc. possession from December 6th, 1866, up to the com-mencement of this action; etc.

It was admitted that plaintiff and defendant both claimed under G. M. Conn, and that defendant was in possession of the land sued for when the action was brought.

The testimony for the plaintiff tended to show the following facts : The property in dispute was owned at the time of his death by George M. Conn, who died in June, 1866, leaving a widow, Mrs. Charlotte Conn, who was his executrix, and two children, Charity Conn, who afterwards became Charity Verdery, and George H. Conn. Mrs. Verdery married in 1868, and attained her majority in 1872. George H. Conn attained his majority October 25th, 1869, and died in April, 1886, and his sister became his administratrix in 1887. By his will, George M. Conn devised to his two children all his estate, giving to his wife for her support so long as she remained his widow, and for the support and education of his children, the use of all his estate ; he empowered his executors "to sell any portion of my estate whensoever in their judgment it may be necessary for the support of my said wife and for the support and education of my said children or to the interest of my estate, and to execute all necessary conveyances for the same." He appointed his wife and another executrix and executor, but it seems that his wife alone qualified. On the 6th of December, 1866, Mrs. Conn, as executrix, sold the land sued for (describing it as it is described in the declaration) to the Atlantic & Gulf Railroad Co. The consideration of this deed was $2,000 in money and $2,000 in bonds of the State of Georgia. The deed does not recite that the sale was a public sale after advertisement. The testimony for plaintiff tends to show that it was a private sale without advertisement ; that the 6th of December fell on Thursday ; that the land was worth at the time considerably more than $4,000 ; that George H. Conn was weak-minded from childhood ; that he led the life of a wandering vagabond ; and he is described in the testimony as idiotic, insane, an imbecile and a lunatic, his condition growing worse up to the

time of his death.   In 1873, the condition of  his  mind
was very bad, and it continued to be bad until  he  died.
In 1868, after the death of Mrs. Conn, letters of admin-
istration  on  the estate of George M. Conn  were  issued
to M. Spain Verdery.   No returns were made by either
Mrs. Conn or Mr. Verdery as to the estate of George M.
Conn ; and it  seems that Verdery and the securities on
his bond  had little  or no property, and that he  was a
cousin of the husband of plaintiff, who  was  Dr. P. S.
Verdery.   The plaintiff  testified, among  other  things,
that she did not know  anything about  the sale of the
land by her mother; that her brother was in Savannah
in 1866, but she did not know  whether he knew  about
the sale  or  not; that she  and her  brother lived in
Augusta with her mother for a year or two, her mother
having moved to Augusta in 1867 ; that  they were sup-
ported by her mother,  but she did not think  they got
any of the  proceeds of the sale, though  she did  not
know  where  the  money  came  from to support them ;
that she knew of  Spain Verdery's appointment as ad-
ministrator, but made no application to  him  for money,
though  her  husband may  have  done  so ; she did not
know of a suit brought by Spain Verdery, as adminis-
trator of her father's estate, for property bought by her
mother in Augusta, said  property having been bought
by her mother before leaving  Savannah ; she knew  the
matter was in the hands of lawyers and the  administra-
tor, but never knew what became of it ; knew there was
an administrator of  her  mother's estate,  but  made  no
effort to find out who  was  the  administrator and what
became of the property ; she thought her mother bought
that property  in Augusta  with proceeds of  the sale of
the land sued for ; knew her mother had  bought a lot
in Savannah after  her father's death and  knew of  the
sale of the  lot sued for, but did  not inquire  as to  who

bought it.  Her mother had no separate estate, and
all of the family were supported out of her father's
estate.  At times, from 1875 on, her brother might have
had his right mind, but she does not think he could
have carried it out, and his mind seemed to get worse
and worse until he died.  Depositions of plaintiff also
were introduced, and they seem to contradict, in some
respects, her oral testimony as above stated.

The testimony for the defendant tended to show the
following:  When the Atlantic & Gulf Railroad Com-
pany purchased the land it took possession of it, and
in the fall of 1870 laid tracks upon it; it also used it in
various ways, as a dumping-ground, etc.  The Atlantic
& Gulf Railroad Company also built a water-closet and
and an oil-house on it, put a gang of hands upon it,
opened up the drains, ditched and levelled it.  This
use and possession of the property continued by the
Atlantic & Gulf, by the receivers appointed for it, by
the purchasers at the receivers' sale and by the defend-
ant, and the possession seems never to have been dis-
turbed or questioned up to the time of the bringing of
this suit.  A bill was filed against the Atlantic & Gulf
Railroad Company in the United States circuit court for
the southern district of Georgia by the trustees for its
mortgage bondholders, and on February 19th, 1877,
receivers were appointed under this bill and took
possession on that date, and the Atlantic & Gulf Rail-
road Company was ordered to make a deed of all its
property to them.  This deed was duly executed as
ordered, on March 1st, 1877.  The receivers were con-
tinued in possession pending the litigation, and on June
20th, 1879, were ordered to sell all the property, etc. of
the road.  Sale was made at public outcry on the 4th
day of November, 1879, and Henry B. Plant being the
highest bidder, the property was knocked off to him.

The sale was finally confirmed on November 19th, 1879, and the receivers were ordered to make a deed to such corporation as the purchaser at said sale, and such persons as might be associated with him, might form under the act of February 29th, 1876. H. B. Plant and his associates did form such corporation, to wit, the defendant, and on the 29th of November, 1879, the receivers executed to defendant their deed as ordered by the court. Neither the Atlantic & Gulf Railroad Company nor the receivers nor the purchasers from the receivers had any notice of any defect of the title of the Atlantic & Gulf road to the land in dispute, other than such as might have been given by the record and chain of title under which they held. While George H. Conn may have been, as a boy, dull and very stupid, he was not insane or a lunatic; in 1873, he applied to an attorney in Savannah and had filed an application calling upon Mr. M. Spain Verdery, as administrator of his father's estate, to show cause why his letters of administration should not be revoked for failure to make returns. An order appears to have been issued by the ordinary upon this petition, but nothing further seems to have been done with it. A physician testified for the defendant that he knew George H. Conn and treated him from 1879 to 1881; that he had lucid intervals monthly which lasted from twenty to twenty-three days at a time; that he had sufficient strength of mind, during his lucid intervals, to understand his legal rights if he were informed of them; that the cause of his mental derangement, existing at the time this physician was treating him, was self-abuse, but this only tended to increase his insanity; witness's acquaintance with him ceased in 1882; he was employed by George H. Conn himself and partly paid by him.

The defendant introduced petition of P. S. Verdery

Verdery *et al. vs.* The Savannah, Florida and Western Railway Co., and *vice versa.* ·

to the ordinary of Douglas county praying for a com-
mission of lunacy to examine into the condition of G. H.
Conn, etc., dated April 6th, 1883 ; the order appointing
a commission, of the same date, oath of the jury and
their verdict that G. H. Conn was not a lunatic. As to
these papers, the ordinary of Douglas county certified
that they were a true transcript of all the proceedings as
appeared on file in his office, and this certificate was
under the seal of his court. The papers themselves
have upon them no entries of filing.

Much other testimony was introduced by defendant
not material here. The jury found in its favor. Plain-
tiff moved for a new trial on many grounds, which
need not be set forth, as the nature of them sufficiently
appears from the decision. One of them was, because
of newly discovered testimony set forth in the affidavit
of Mrs. Jane Derby, in substance as follows: The mind
of George H. Conn was diseased and impaired, especially
during the years 1869, 1871 and 1872, and deponent
believes that he was an imbecile from early boyhood ;
his mind grew worse as he became older, and while at
times he might have been capable of talking rationally
on some things, she believes he was always of unsound
mind. Mrs. Charlotte Conn was unable to write and
could not sign her own name, having to make her cross
mark to a deed to a cemetery lot which deponent bought
from her. There seems to have been produced on the
hearing of the motion another affidavit of Mrs. Derby,
tending to show that she had given Mrs. Verdery infor-
mation as to her knowledge of the matters mentioned
before the trial.

The motion was overruled, and plaintiff excepted.
There was a cross-bill of exceptions by the defendant,
not now material.

J. A. CRONK and R. B. TRIPPE, for plaintiffs.

CHISHOLM & ERWIN, S. T. KINGSBERY and W. R. LEAKEN, for defendant.

BLECKLEY, Chief Justice.

1. Upon the admitted facts in the case the presiding judge decided as matter of law that the plaintiff, as to her own individual right to half of the premises in dispute, was barred by the statute of prescription. We see not the slightest indication in the record that this ruling was erroneous. Nor do we entertain any doubt that where the facts are admitted or undisputed, the judge may decline to submit them to the jury, and may decide directly the question of law arising upon them. Of course had any of the material facts involved in this branch of the case been in dispute, the jury should have dealt with them, under proper instruction from the court as to the law.

2. According to the charge of the court (a copy of which is in the record), and to the statements contained in the order overruling the motion for a new trial, the right of the plaintiff to recover as the administratrix of her deceased brother, George H. Conn, was made to turn wholly upon the defence of prescription, as to the one undivided half of the premises which he took under his father's will. Inasmuch as all other defences were expressly withdrawn from the jury, the evidence as to them, whether rightly or wrongly admitted, became immaterial; indeed, withdrawing the defences themselves amounted virtually to withdrawing all the evidence which had been submitted in support of them.

3. George H. Conn attained his majority in 1869, and died in 1886; this action was brought by his administratrix in 1887. The adverse possession, under written color of title in the defendant corporation and those

under whom it claimed, had been continuous and uninterrupted from the year 1866, consequently for more than sixteen years during the lifetime of the plaintiff's intestate after his minority ceased. During the first part of the period the possession was held by the Atlantic & Gulf Railroad Company. Then came an interval of some two years, in which the property was in the hands of a receiver appointed by the United States Circuit Court upon a bill filed against the company by its creditors, to subject the same to the payment of its debts. The residue of the term of possession was by the defendant in this action, under a sale and conveyance made in pursuance of the decree rendered by said court upon the bill just mentioned. Had Conn been under no disability by reason of unsoundness of mind, his rights would have been barred irrespective of the holding by the receiver; for adverse possession of lands under written evidence of title for seven years gives title by prescription. Code, §2683. The possession, however, must be public, continuous, exclusive, uninterrupted and peaceable, and be accompanied by a claim of right. *Id.* §2697. An inchoate prescriptive title may be transferred by the possessor to a successor, so that the successive possessions may be tacked to make out the prescription. *Id.* §2689. The alleged disability of Conn, had it in fact existed and been continuous, would have hindered the statute of prescription (code, §2686) from running against him at all; but as it was intermittent, the question arose in the case whether the time, or any of it, during which the property was in the hands of a receiver, could be counted as a part of the prescriptive period. The court thought it could be counted, and so instructed the jury. Upon principle we consider this correct, and all the authority we can find on the subject tends to support it. It may safely be

affirmed that the property of a debtor in the hands of a receiver, for the purpose of being appropriated for the mutual benefit of the debtor and his creditors, is held by the receiver as a successor of the debtor, if not as a *quasi* agent for him. As against strangers to the suit such holding is no breach of continuity. The statute of limitations (or of prescription) in favor of the debtor's inchoate prescriptive title is not suspended, but continues to run pending the receiver's possession. Kerr on Receivers, 160–1; Beach on Receivers, §§1, 219, 220; High on Receivers, §§135, 184, 556. There is nothing in our statutes indicative of a purpose by the legislature to stop the running of prescription because a court has possession by its receiver; and certainly there is no necessity for treating the period of such possession as an implied exception, for a stranger who claims the property is not without a remedy. On the contrary he has two remedies, one of which is discretionary with the court whose receiver has possession. The other is matter of right in all cases. By petition *pro interesse suo*, the claimant to the property held by a receiver is entitled always to a hearing, should the court in its discretion think proper to deny him leave to bring a separate action in his own behalf. 2 Story Eq. 833a; 3 Daniel Chan. Pr. *1744; Beach on Receivers, §654; High on Receivers, §139.

The reluctance of courts to engraft exceptions upon statutes of limitations is everywhere apparent. A comprehensive view of it may be had by consulting Tyler on Ejectment, 928–933. And in *Jones vs. Bivins*, 56 *Ga.* 538, it was ruled that the exceptions specified in the code, by which a prescriptive title will be defeated, are exhaustive and will not be enlarged by construction.

4. No prescription works against the rights of an

insane person so long as the insanity continues; but he has a like number of years after the disability is removed, to assert his claim against the person prescribing. Code, §2686. A prescription commenced ceases against a person under disability, pending the disability, but on its removal the prior possession may be tacked or added to the subsequent possession to make out the prescription. *Id.* §2687. In view of these two rules, the court instructed the jury that if adverse possession, with all the characteristics required by the statute, existed after George H. Conn became of age, during periods which added together make more than seven years whilst he was of sufficiently sound mind to understand his rights if they had been explained to him, the jury would find against his administratrix. We think this correct, taking it in the light of the evidence contained in the record. There is no reasonable probability that Conn was insane at all until 1873, and in so far as the evidence renders definite the intervals of sanity, compared with those of insanity, the former would seem to be about three-fourths, and the latter one-fourth, of each month. It is true that these definite terms apply directly to certain years (1879 and two or three years thereafter), but the witness who testifies was a physician who treated him, and who gave it as his professional opinion that similar intervals had been realized by his patient for several years previously.

5. In 1883, proceedings were had under section 1855 of the code, on a commission of lunacy sued out in Douglas county, the object of which was to have Conn committed to the lunatic asylum. The finding of the jury on this commission was in Conn's favor, and that he was not a lunatic. An exemplified copy of these proceedings was admitted in evidence by the court at the instance of the defendant, over objection by the

plaintiff. Several objections are mentioned in the motion for a new trial, but the only ones verified as having been presented are, that the papers had never been filed or recorded, and that no judgment had been entered thereon. The certificate of the ordinary verifying the exemplification shows that the papers were on file in his office, and there is no law requiring them to be recorded, or providing for or authorizing any judgment to be entered up on the verdict of the jury, inasmuch as the verdict found that the party was not a lunatic. The evidence might have been objectionable for other reasons, but we think it was not amenable to the objections above specified.

6. The 5th ground of the motion for a new trial, which complains that the court superadded certain observations after giving in charge the request made by the plaintiff, must fail, because some of the superadded matter is undoubtedly legal. The rule is, that unless the whole of the charge excepted to is illegal, the exception must specifically point out the illegal part.

7. The alleged newly discovered evidence is so obviously insufficient to require or authorize a new trial, that we need not discuss it.

8. On the general question of the verdict being warranted by the evidence, there might well be two opinions. Had the court below granted a new trial, we should not have disturbed its judgment. A careful reading of the evidence satisfies us that we should in like manner defer to the decision refusing a new trial There is enough evidence in favor of the verdict to uphold it.

The judgment in the main case being affirmed, the cross-bill of exceptions is dismissed.

Judgment affirmed.