NANCY J. CHATHAM et al. v. L. W. LANSFORD.

(Filed 9 December, 1908).

1. **Deeds and Conveyances — Grantor in Possession — Subsequent Deed—Adverse Possession.**

   A grantor in a deed may afterwards acquire title to the land therein conveyed by purchase or adverse possession, good against his grantee and those claiming under him.

2. **Deeds and Conveyances — Grantor in Possession — Subsequent Deed—Color of Title—Adverse Possession.**

   When a grantor of a deed remaining in possession subsequently purchases from another the land described therein, and takes a deed therefor to himself, the second deed is color of title which open, notorious, continuous adverse possession may ripen into a perfect title against all persons not under disability.

3. **Same—Entry and Ouster—Estoppel—Adverse Possession.**

   Every entry on land is presumed to be under such title as the party thus in possession holds; and when a grantor in a warranty deed remains in possession of lands, afterwards purchases the same from a third person, takes deed therefor to himself, and claims the right of possession thereunder, the fact of his thus taking the deed amounts to an entry and ouster, and he is not estopped from asserting title by adverse possession because of the covenant of warranty in his deed.

ACTION in ejectment, tried before *Ferguson, J.,* and a jury, May Special Term, 1908, of WILKES, for the recovery of a tract of land.

At the close of the testimony, upon an intimation from the Judge as to how he would charge the jury upon a matter vital to the plaintiffs' cause of action, they submitted to a nonsuit and appealed. The facts are stated in the opinion of the Court.

*O. C. Dancy, R. Z. Linney* and *J. B. Connelly* for plaintiffs.

*W. W. Barber* and *Finley & Hendren* for defendant.

BROWN, J. The plaintiffs claim under a deed from Noah Brown to Clarey Bicknell, dated 5 February, 1869, and by descent from her. The defendant claims under a deed exe-

cuted by Larkin J. Bicknell to Noah Brown, dated 16 July,
1870. There is evidence tending to prove that Noah Brown
went into possession of the land in controversy in 1870,
under his deed from Larkin J. Bicknell, and remained in
possession up to the time of his death, about 1886; that his
widow then continued in possession, under the will of Noah
Brown, devising to her a life-estate, or an estate during her
widowhood, up to the time of her death, some few years ago;
that Lindsay Jarvis, administrator *c. t. a.* of Noah Brown,
went into possession upon the death of the widow and remain-
ed in possession until he sold it as administrator to the de-
fendant, who has been in actual possession ever since, claim-
ing it as his property.

At the close of the testimony, his Honor stated that he
would charge the jury that, "if they should find from the evi-
dence that in 1870 Noah Brown took a deed of conveyance
from Larkin J. Bicknell, and on receipt of the deed went
into possession of the lands under the deed, and remained in
possession until the time of his death; and further find that
Noah Brown by his will devised the lands to his widow
during her widowhood, and she remained in possession under
the will until her death, and after her death Lindsay Jarvis,
as administrator with the will annexed, took charge and pos-
session of the land, and sold it to the defendant, and the
defendant has been in possession to the commencement of
this action, he would instruct the jury to answer the first
issue, 'No.' "

Upon this intimation from the Court the plaintiffs submit-
ted to a nonsuit and appealed.

It is contended that Noah Brown, having executed a deed
with covenants of warranty to plaintiffs' ancestress, Clarcy
Bicknell, is estopped from setting up his after acquired title,
and that those claiming under him are likewise estopped.

This contention, we think, is based upon a misconception
of the character of the title the defendant claims under.

Notwithstanding his prior deed with warranty, Noah Brown could acquire title to this land by purchase from Clarey Bicknell or from those claiming under her; or he could after such conveyance acquire title against her and those claiming under her by adverse possession.

One of the recognized methods of acquiring title to land is by open, notorious, continuous adverse possession, under color of title. *Mobley v. Griffin,* 104 N. C., 115; *Isler v. Dewey,* 84 N. C., 345.

The deed from Larkin J. Bicknell to Noah Brown was executed after the deed from Noah Brown to Clarey Bicknell, and therefore becomes color of title, and when accompanied by adverse possession for the legal period ripens into actual title against any person (not under disability), including Clarey Bicknell, and those claiming under her.

It is immaterial that the land was conveyed formerly by Noah Brown by warranty deed. The grantor in such deed is not thereby estopped from asserting the adverse possession by a covenant of warranty. *Sherman v. Kane,* 86 N. Y., 57; *Stearns v. Hendersass* (Mass.), 57 Am. Dec., 65; 1 Am. & Eng., 819, and cases cited. Though the mere continued possession of the vendor of land after conveyance executed is not adverse to his vendee, or one claiming under him, yet there is nothing in their relations which will prevent the vendor from acquiring title again by adverse possession. He may disseize his grantee, and by adverse · possession for the necessary time bar the latter's entry. *Tilton v. Emery,* 17 N. H., 536; *Smith v. Osage,* 80 Iowa, 84; *Reilly v. Balser,* 61 Mich., 399.

When Noah Brown took the deed from Larkin Bicknell on 16 July, 1870, and entered upon this land described in it, he is presumed to have entered under and by virtue of such title, for every possession is presumed to be under such title as the party in possession holds, and from the time such title is acquired. *Bryan v. Spivey,* 109 N. C., 57; *Hawkins v.*

*Cedar Works,* 122 N. C., 89. Such entry upon the part of Noah Brown, claiming under such deed, constituted an ouster, and from that time he was continuously subject to action by Clarey Bicknell and those claiming under her.

We are of opinion that his Honor was right in his proposed instruction, and that plaintiffs had no just ground for submitting to a nonsuit.

In this view of the case we deem it unnecessary to discuss the other exceptions in the record, although we have examined them and do not think they can be sustained.

Affirmed.