# Cannon v. Prude.

*Ejectment.*

(Decided January 23, 1913.   Rehearing denied May 8, 1913.
62 South. 24.)

1. *Appeal and Error; Review; Directed Verdict.*—In considering whether plaintiff was entitled to the affirmative charge the appellate court will consider only the phases of the evidence and its tendencies which are favorable to defendant, and in doing so, the court will treat as having been admitted certain evidence which was excluded but which should have been admitted.

2. *Adverse Possession; Vendor and Purchaser; Payment.*—The occupancy of a person in possession of the property who has fully paid the purchase money is a possession adverse to the vendor.

3. *Same; Jury Question.*—The evidence examined and held sufficient to take to the jury the question of adverse possession of defendant and his predecessors in title.

4. *Same; Tacking; Administrator.*—When an administrator has the legal right by a statute to take possession and control of his decedent's real estate, and actually does so, the possession of the administrator may be tacked on to the possession of his intestate for the purpose of completing the bar of the statute of limitations.

5. *Same; Trustee in Bankruptcy.*—A bankrupt is civiliter mortuous and the trustee of his estate is his administrator, and hence, the possession of the trustee may be tacked on the possession of the bankrupt to complete the bar of the statutes of limitations.

APPEAL from Fayette Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Ejectment by J. O. Prude, Jr., against W. M. Cannon. Judgment for plaintiff and defendant appeals. Reversed and remanded.

LONDON & FITTS, and CHARLES W. SANDERS, for appellant. A receiver cannot hold adversely, neither can an administrator nor a trustee in bankruptcy, and hence, their holding cannot be tacked for the purpose of completing the bar of the statute.—*Wilkerson v. Lehman-D. & Co.,* 136 Ala. 463; *Scott v. Ware,* 65 Ala. 186;

*Gayle v. Johnson,* 80 Ala. 392; 1 High on Receivers 1; 4 Md. 80; 2 Jones on Mortgages sec. 1535.

F. A. GAMBLE, and BANKHEAD & BANKHEAD, for appellee. The defendant wholly failed to make proof of the loss or destruction of the deed, and failed to prove the necessary elements of a deed.—*Hancock v. Kelly,* 81 Ala. 368; *Potts v. Coleman,* 86 Ala. 94; *Branch v. Smith,* 114 Ala. 463; *Thomas Bros. v. Williams,* 54 South. 494. The possession of E. and W. Harkins could not be adverse to the true owner unless the true owners had notice that they renounced possession and were holding adversely to them.—*Hicks v. Swift C. M. Co.,* 133 Ala. 141; *Johns v. Johns,* 93 Ala. 239; *Jones v. Pelham,* 84 Ala. 208. The possession of Wallace as a trustee in bankruptcy was not such as defendant in the court below could tack on to and make the possession continuous.—*Wilkerson v. Lehman-D. Co.,* 136 Ala. 463; *L. & N. v. Philyaw,* 88 Ala. 264; *Riggs v. Fuller,* 54 Ala. 141; *Scotch L. Co. v. Sage,* 132 Ala. 598. The evidence, therefore, fails to show any title, and the court properly directed a verdict.

DE GRAFFENRIED, J.—The plaintiff, Prude, brought this suit against the defendant, Cannon, to recover possession of a certain lot in the town of Fayette, Ala.

At the conclusion of all the evidence the court gave to the jury the affirmative charge in favor of the plaintiff. Thereupon the jury returned a verdict in favor of the plaintiff, a proper judgment followed the verdict, and the defendant appeals.

(1) The plaintiff established, by the deeds which he introduced in evidence, a prima facie right to recover, and, unless there was evidence tending to show that the

[Cannon v. Prude.]

defendant and those through whom he claimed the land had through adverse possession acquired title to the land, the plaintiff was entitled to recover.

Of course, if there was evidence in the case from which the jury had the right to infer that the defendant and those through whom he claimed the land had acquired the legal title thereto by adverse possession, then the plaintiff was not entitled to the general charge which the court gave to the jury in his behalf.

On this subject we will, therefore, consider only the phases of the evidence and its tendencies which are favorable to the defendant. In doing this we will treat as having been admitted certain evidence which was offered and excluded, but which, in our opinion, should have been admitted.

(2) The evidence for the defendant tended to show that about the year 1895 or 1896 "the Odd Fellows made an agreement, through a committee appointed by the lodge, with W. W. Harkins for the lot sued for, for $40." At that time the Methodist Church was situated in what is known as the old town of Fayette. The lower floor of this church was used by the members of that church for religious purposes, and the upper floor by the Odd Fellows as a lodgeroom. We take it that the Methodist Church and the Odd Fellows each had an interest in the building. About this time the church building was moved from the old town of Fayette and placed upon the lot in controversy. While the building was being moved, the Methodist Church made an agreement with the Odd Fellows, whereby the church agreed to pay one-half of the purchase price of the lot, with the understanding that the church was to own an undivided one-half interest in the lot, and with the further understanding that the Methodist Church and the Odd Fellows were to use the building as they had pre-

viously done. The church and the Odd Fellows, after the building was moved onto the lot in controversy, used and occupied the building until 1899 or 1900. There is evidence tending to show that before that time the Odd Fellows had paid their half of the purchase price of the lot, because a witness, G. T. Hassell, testified that to the best of his recollection "he and one or two others, as a committee from the Odd Fellows Lodge, had gone to W. W. Harkins and asked him to make the Odd Fellows a deed to the lot, and made mention of the $20 having been paid to him by the lodge, and that the said Harkins had declined to make the deed, saying that he did not have his title straight, and could not make a deed until he could clear up some little tangle to the title to the property."

While Harkins denied that the Odd Fellows ever paid him the above $20, or that he ever sold or agreed to sell to the Odd Fellows said lot, the above-quoted evidence has some tendency, at least, to show that he had agreed to sell the property to the Odd Fellows, and that the Odd Fellows had paid him their half of the purchase money.

There was evidence, also, tending to show that Harkins donated to the Methodist Church the $20 of the purchase money which was due by the church. A witness testified that W. W. Harkins "had told the pastor of the church at Fayette that the church need not pay him anything, in so far as the church was concerned, for the lot in question. The witness further testified that he did not know whether or not this conversation had taken place in connection with the purchase of this property in controversy by the church from Harkins, or whether it was a conversation with reference to financial affairs of the church."

This last-quoted testimony not only has some tendency to show that the purchase money due by the church was donated to the church, but it also, taken in connection with the above-quoted testimony of the witness G. T. Hassell, tends to show that the alleged vendor, Harkins, knew that the Methodist Church and the Odd Fellows had, by some agreement made between them, each become the owner of an undivided one-half interest in said lot.

There was therefore evidence in the case tending to show that prior to the year 1899 or 1900 the Odd Fellows and the Methodist Church had, by a payment made by the Odd Fellows and through a donation made by the alleged vendor to the Methodist Church, fully discharged their obligation to pay the vendor anything for the lot; or, in other words, that the purchase money for the lot had been fully paid. It therefore seems to us that there was some evidence in the case tending to show that the Odd Fellows and the Methodist Church, prior to 1899 or 1900, while they were still in the joint occupancy of the property, were in adverse possession of the property.

The occupancy of one in possession of property, who has fully paid to the vendor the purchase money, must, in its very nature, be a possession adverse to the vendor.

(3) The building which was placed upon the lot by the Odd Fellows and the Methodist Church was their building, and there was, as we have above said, evidence tending to show that the lot was paid for by them. About the time that the Odd Fellows and the Methodist Church moved out of the building, E. Max and W. Clyde Harkins, sons of W. W. Harkins, moved into the building and conducted a mercantile business there. On the 11th day of March, 1901, the Odd Fellows, by a quitclaim deed, conveyed their interest in the building to

them; and, while there is no direct evidence in the record on the subject, we think that the jury, under the circumstances of this case, had a right to infer that E. Max and W. Clyde Harkins moved into the building with the consent of the Odd Fellows and the Methodist Church, and that their possession, prior to the execution of the deed by the Odd Fellows to them on March 11, 1901, was the possession of the Odd Fellows and said Methodist Church.

The assessment records of Fayette county were destroyed by fire in 1911, but the tax assessor testified that to the best of his recollection the property from 1895 or 1896 to about 1900, the period when the church and the Odd Fellows occupied the building, was assessed by no one; that from about 1901 to 1902, the period when the property was occupied by E. Max and Clyde Harkins, the property was assessed by said E. Max and Clyde Harkins; and that, subsequent to that time, the property had been regularly assessed by the defendant alone.

There was evidence tending to show that in May, 1902, the said lot was sold by J. H. Wallace, as trustee in bankruptcy of E. Max and Clyde Harkins, as their property, and that at the sale the defendant bought the lot, went into the immediate possession of the same, and that he has ever since that time been in the adverse possession of the same.

Of course, the tendencies of the plaintiff's evidence were widely divergent from those of the defendant's, and in some instances the divergencies are so wide that they cannot be so reconciled as that both can be made to speak the truth. We have nothing to do with reconciling those divergent tendencies, and we have nothing to do with the weight or credibility of the evidence.

[Cannon v. Prude.]

It seems to us that there was *some* evidence in the case from which the jury had the right, in their province as triers of the facts, to say that the defendant and those through whom he claimed the property had acquired the legal title thereto by adverse possession for a period of 10 years.

It is therefore our opinion that the trial court committed reversible error in giving to the jury the general affirmative charge in favor of the plaintiff.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.

## ON APPLICATION FOR REHEARING.

DE GRAFFENRIED, J.—When an administrator has the legal right by statute to take possession and control of his intestate's real estate, and actually does so, the possession of the administrator may be tacked onto the possession of his intestate for the purpose of completing the bar of the statute of limitations.—1 Cyc. p. 1005, subd. 9.

A bankrupt is civiliter mortuus. The trustee of his estate is, in fact, his administrator. "It is no new doctrine that the assignee or trustee in bankruptcy stands in the shoes of the bankrupt."—*Security Warehouse Co. v. Hand*, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789. In fact, the authority of a trustee in bankruptcy over, and his duties with reference to, the estate of his bankrupt are fully as broad as are the powers and duties of an administrator, under the statutes of this state, with reference to the real and personal estate of his intestate. Stepping, as he does, into the shoes of the bankrupt, his possession, while held

for the benefit of the creditrs, is the possession of the bankrupt, and may be tacked onto the possession of the bankrupt for the purpose of completing the bar of the statute of limitations.

The doctrine announced in *Wilkinson v. Lehman-Durr Company*, 136 Ala. 463, 34 South. 216, while perfectly sound as applied to the facts of that case, has no applicability to the facts of the instant case.

The application for a rehearing is overruled.