## CARAKER *v.* BROWN, administrator.

1. There being no evidence that the administrator had ever been in possession of the premises sued for, or that any order for the sale thereof had ever been granted to him by the court of ordinary, or that there was any necessity for the administrator to recover them in order to pay the debts of his intestate, or any circumstances tending to show the necessity for their recovery in order for the administrator to distribute the same, a verdict for the defendant was demanded; and the court erred in not granting a new trial on the ground that the verdict was contrary to the evidence. *Adams* v. *Phillips*, 132 *Ga.* 455 (64 S. E. 467); *Winn* v. *Simmons*, 141 *Ga.* 680 (81 S. E. 1106).

2. The fact that the intestate of the plaintiff owed no debts, and that all the legatees under the will of the husband of said intestate, including the latter, accepted and took possession of the legacies given them under

said will, would not estop her administrator from asserting title to be in her to land in which she was given a life-estate under said will. To constitute an estoppel the testator must have affected to give property not his own, which was true in this case; but he must also have given a benefit to the person to whom that property belongs, which is not true in this case, as the wife did not get any benefit under the will to which she was not entitled independently of the will, and such legatee must elect to take under the instrument. Civil Code, § 4610; *Johnson v. Hayes,* 139 *Ga.* 218, 221 (77 S. E. 73).

3. The court did not err in refusing a request to charge which was couched in argumentative language. *McGee* v. *Young,* 132 *Ga.* 606 (64 S. E. 689). The written request set out in the second ground of the defendant's amendment to his motion for new trial has this infirmity. Besides, this request was faulty in not enumerating all the elements necessary to give a prescriptive title.

4. The possession of property by the vendee of a legatee, by the legatee, and by the executor of the will under which the legatee was given such property, may be tacked, to make out the full period of the prescriptive term.

5. The court did not err in refusing a written request to charge, based upon the theory that the defendant had acquired a prescriptive title by twenty years possession, because there was no view of the evidence under which said charge was pertinent. Where a husband and wife jointly occupy premises as a home, prescription will not run in favor of one against the other. *Carpenter* v. *Booker,* 131 *Ga.* 546 (62 S. E. 983, 127 Am. St. R. 241).

6. The court did not err in refusing to charge the jury, when requested so to do by the defendant, that, when husband and wife occupy property jointly, the presumption of law is that such possession is that of the husband, and that the burden was on the plaintiff to rebut this presumption; the undisputed evidence showing title in the wife to such property during their joint occupancy of the premises in dispute.

7. The court did not err in submitting to the jury the question whether the premises in dispute were embraced in the deeds under which the plaintiff claimed, as the court could not as matter of law determine this question from the descriptions embraced in these muniments of title.

8. Where the owner of land permits another to sell it to a third person, and at the same time executes a formal disclaimer of title thereto, which disclaimer is attached to the deed under which said land is so sold, and on the strength of which disclaimer the vendee buys and accepts title, the maker of said disclaimer and his heirs would be estopped from afterward asserting title to the property so conveyed.

9. The court did not err in charging the jury that the muniments of title, under which the plaintiff claimed, were sufficient to convey the title to the premises in dispute from the common grantor to the intestate of plaintiff.

10. The 12th, 14th, and 15th grounds complain of the admission of certain deeds and a mortgage. These grounds do not contain copies of these instruments, nor state their contents substantially. For this reason these grounds can not be considered. *Callaway* v. *Beauchamp,* 140 *Ga.* 207 (78 S. E. 846).

11. The court did not err in excluding the record of the homestead of Hamilton Brown Sr.: (a) Because the original homestead papers, and not the record thereof, were the highest and best evidence, the loss of the originals not being shown. *Brown* v. *Driggers*, 62 *Ga.* 354; *Larey* v. *Baker*, 85 *Ga.* 687 (11 S. E. 800). (b) Because the homestead was void, not having been approved at the time fixed for the hearing of the application. *West* v. *McWhorter*, 141 *Ga.* 590, 593 (81 S. E. 859). (c) Because the homestead proceedings were irrelevant, declarations of one in possession · of property in favor of his own title being only admissible to prove his adverse possession (Civil Code, § 5767), and title being shown in Hamilton Brown Sr. at the date of the homestead, thus rendering evidence of adverse possession unnecessary and irrelevant to establish his title.

12. When property has a descriptive name, it may be conveyed by that name: and such description will prevail over one which is intended to be a further description, but which is uncertain and imperfect. *Bunger* v. *Grim*, 142 *Ga.* 448 (83 S. E. 200, Ann. Cas. 1916C, 173).

No. · 2510.    FEBRUARY 17, 1922.

Ejectment.    Before Judge Park.    Baldwin superior court. February 19, 1921.

This was an action of ejectment in the fictitious form, commenced on December 20, 1913. The demise was laid in the name of Joe Brown as administrator of Katherine Brown. The suit was brought to recover "that tract of land situate and lying in the city of Milledgeville, Baldwin county, Georgia, known in the plan of the city as part of lot No. 3, Sq. No. 24, bounded on the east by lands of Bell Brown; north by Washington St.; south by lands formerly owned by Hamp Brown estate; west by Elbert St." The defendant filed his plea of not guilty, and set up title by prescription by possession for twenty years, and by possession for seven years under color of title. The defendant amended his answer by setting up valuable improvements made upon the premises, under a bona fide claim of title, of the value of $1024.53, and prayed that the value of such improvements be adjudged a lien upon the land if the plaintiff should recover.

Both parties claimed under W. G. Lanterman. On March 28, 1871, Lanterman conveyed to Hamilton Brown certain lands, including the premises in dispute. On January 7, 1878, W. G. Lanterman conveyed by deed to Samuel Walker lands embracing the premises in dispute, which was duly recorded; and attached to said deed was the following instrument:

"Georgia, Baldwin County. I, Hamilton Brown, Senior, certify that the following described city lots in Milledgeville and the Is-

land hereinafter described are not included in my homestead, and I lay no claim thereto, as I was due the purchase-money to W. G. Lanterman for said city lots, and the mortgage given by me to said Lanterman on the Island was dated prior to the homestead act of 1868. Said property known and described as follows: 'The north half of lot number three (3) in square 24, and the south half of lot No. three (3) in square twenty-four (24), and the south half of lot No. four (4) in square twenty-four (24), and the whole of lot No. one (1) in square twenty-four (24), containing one acre, and the three half lots containing half acre each, together with all the appurtenances thereto appertaining. Also the John Haas & Dan'l Caraker Island, lying in the Oconee River, near Milledgeville, Ga., in said county, containing seven acres, more or less, one-half undivided interest thereof for and during the natural life of Lizzie Willis, the other undivided half interest in fee simple.'

"In witness whereof, I have hereto set my hand and affixed my seal this Jany. 7, 1878.            Hamilton Brown (L. S.)

"Attest: B. B. Adams, W. W. Williamson."

The plaintiff claimed by mesne conveyances from Samuel Walker into Katherine Brown. He introduced his letters of administration on Katherine Brown's estate, granted by the court of ordinary of Baldwin county, on November 18, 1913.

Hamilton Brown and his family lived on these premises for many years prior to his death in February, 1902. His wife, Katherine Brown, died in possession of these premises, some seven months after the death of her husband. The plaintiff did not introduce any order of the court of ordinary authorizing him to sell this land, and he did not show that it was necessary for him to recover the same for the payment of debts or for distribution among the heirs of Katherine Brown. Hamilton Brown died testate, and his will, dated June 7, 1901, was probated and admitted to record on February 5, 1902. The eighth item of his will was as follows:

"I give and bequeath to my son, Frank, the house and lot on which I now reside, after the death of his mother, everything to remain on said premises just as it now is, so long as his mother shall live, also all of the parcel of land outside of that belonging to Joseph, with all the improvements thereon, in same block as

that of my residence lot, also the vacant quarter of an acre lot fronting the Covey lot, and adjoining lot given to William." This item devised the property in dispute.

Frank Brown was named as executor of this will, and letters testamentary were issued to him on February 5, 1902. On November 17, 1909, Frank F. Brown conveyed to C. T. Caraker the premises in dispute. Caraker took immediate possession of the premises in dispute, under his deed from Frank Brown, and has had continuous and uninterrupted possession thereof since his purchase. Sometimes the house on these premises would be vacant, due to the fact that one tenant would move out and some time would elapse before another tenant would take possession; but Caraker controlled and claimed this property, his possession being open, public, and notorious.

Frank Brown as executor of his father's will took possession of the premises in dispute and held the same as executor or individually, through tenants, continuously from the death of his testator down to the time he sold the same to Caraker.

The jury found for the plaintiff the premises in dispute, that the rental value of the land from December 20, 1909, was $850, that the present market value of the land, exclusive of improvements, was $800, that the defendant placed these improvements thereon in good faith, and that the present market value of such improvements was $1500. Judgment was entered in favor of the plaintiff, in accordance with this verdict. The defendant moved for a new trial, on the formal grounds, and on the following additional grounds:

(1) Because the court refused to charge the jury, when properly requested in writing by the defendant, " that if you believe from the evidence that Katherine Brown died owing no debts and . . that all the legatees under the will of Hamilton Brown accepted the legacies provided therein for them, and went into possession of the various legacies therein provided without protest or objection, I charge you that the plaintiff, as administrator of the estate of Katherine Brown, would be estopped to assert that the title to the property sued for was in Katherine Brown."

(2) Because the court erred in refusing to charge the jury, when properly requested in writing, the following: " The defendant in this case contends that even if it is true that Katherine

Brown died in possession of the property sued for, claiming it as her own in good faith, and even if it is also true that she had occupied the property openly, notoriously, uninterruptedly, continuously, and adversely under a bona fide claim of right for seven years under color of title, giving her a good prescriptive title, nevertheless the plaintiff is not entitled to recover, because, as defendant contends, after the death of Katherine Brown in possession he acquired a good prescriptive title under seven years possession under color of title. He contends that immediately after the death of Hamilton Brown, Frank Brown, executor of his . . will, . . took possession of the property in controversy as legatee under the will of Hamilton Brown, and that this possession continued unterruptedly for more than seven years thereafter, and that while in possession as such legatee . . Brown sold the property in dispute . . to Caraker, who continued in possession thereof about four years before the filing of this suit. The defendant contends that the possession of Frank Brown as legatee under the will of Hamilton Brown was open, notorious, continuous, uninterrupted, adverse and under a bona fide claim of right, and that the possession of Caraker under deed from Frank Brown was also open, notorious, continuous, uninterrupted, adverse and under a claim of right.

"I charge you that the will of Hamilton Brown was color of title; and if you believe that Frank Brown took possession of the premises in dispute as legatee, and said possession continued uninterruptedly and adversely for the period named, and that under the deed from Frank Brown C. T. Caraker held possession of a similar character from that date to the date of the filing of this suit, then the defendant would have a good title by prescription, and it would be your duty to find a verdict in his favor, although you might be satisfied that Katherine Brown at the date of her death had a good title to the property."

(3) Because the court erred in refusing a timely written request to give in charge to the jury the following: "If you believe from the evidence that Frank Brown as executor of the estate of Hamilton Brown went into possession of the property in controversy in 1902, immediately after the death of Hamilton Brown Sr., and remained in possession thereof from that date to 1909, at which date he sold the property to C. T. Caraker, and

if you believe that that possession as executor was open, notorious, peaceable, continuous, uninterrupted, adverse, and under a bona fide claim of right, as executor, and if you further believe that in 1909 he sold the property to C. T. Caraker, and that C. T. Caraker remainded in possession of said property from that date to the filing of this suit, and if you further believe that the possession of Caraker was of the same character hereinbefore referred to, then I charge you that the defendant would have a good prescriptive title and it would be your duty to find a verdict in his favor, although you should believe that Katherine Brown at the time of her death had a good prescriptive title thereto."

(4) Because the court erred in refusing a timely written request to give in charge to the jury following: ". . I charge you that if you believe from the evidence that the possession of Hamilton Brown and Frank Brown and C. T. Caraker was taken together for a period of 20 years or more, and that the possession of all three of said persons named was of the character hereinbefore set out, then the defendant would have a good title and it would be your duty to return a verdict in his favor, notwithstanding the fact that Katherine Brown died in the physical possession of the property . ."

(5) Because the court erred in refusing a timely written request to give in charge to the jury the following: ". . . . I charge you that where a husband and wife occupy property jointly, the presumption of law is that the possession is that of the husband, and that the burden of proof is on the plaintiff in this case to show that the possession was really the [wife's], and that she occupied the property under a bona fide claim of right in herself. . ."

(6) Because the court erred in charging the jury as follows: " I charge you this principle of law: It is claimed that Mr. Caraker did not buy this land until 1909. I charge you if Frank Brown went into possession of the property in dispute, not as a legatee, but as the executor, and he remained in possession of it as executor, and not as legatee, and if he sold it to Mr. Caraker in the year 1909, in order for Mr. Caraker to have a good prescriptive title to the property he and Frank Brown under whom he claims must have been in possession of the land as the owner, as I have already explained to you, for seven years previous to

December 30th, 1913; and if Frank Brown was in possession of it from 1902 up to a short time before he sold it to Mr. Caraker as executor, and not as legatee, then the possession he held it under as executor would not be counted as part of the seven years. He would have to be in possession of it, he and Mr. Caraker, for seven years, and Frank Brown's possession would have to be as legatee, and not as executor. . ."

(7) Because the court erred in charging the jury as follows: "There have been certain deeds introduced in evidence; and I will call them out to the jury, that you may clearly understand them; all these deeds will be out before you, and when you go to your jury room it would be proper for the jury to take all these instructions I read to you; then it is for you to say whether or not the property in dispute is embraced in those deeds. If you reach the conclusion the property in dispute is not embraced in the description in those deeds, under those circumstances the court charges you that the plaintiff would not be entitled to recover. But if you reach the conclusion the property in dispute is embraced in the description of those deeds that will be out before you, the court charges you the plaintiff would be entitled to recover, provided Mr. Caraker has not a prospective title to the land as explained to you by the court. . ." The defendant assigns this charge as error, because the property sued for is described as being bounded on the north by Washington street and on the west by Albert street, and the property embraced in said deeds does not touch either of said streets.

(8) In this ground it is complained that the court erred in his construction of the disclaimer of Hamilton Brown, attached to the deed of Lanterman to Walker, made in 1878. The court charged the jury that if Brown signed this paper disclaiming title to the property therein described, and on the strength of that paper that property was sold by Lanterman to another, on the strength of his disclaimer, then Brown and his heirs would be bound by that paper, provided the premises in dispute are embraced in said disclaimer.

(9) In the charge complained of in this ground the court called the attention of the jury to the muniments of title under which the plaintiff claimed title to the premises in dispute; and instructed the jury that if, after reading the descriptions of the

property embraced in those convenances, they reached the conclusion that the property sued for was the same property embraced in those instruments, they were sufficient to convey the title from Lanterman to Katherine Brown. The court then instructed the jury that when property having a descriptive name is conveyed by that name, such description will prevail over one which is intended to be a further description, and left to the jury to determine whether the property sued for was embraced in those conveyances. The exception to this charge is that these conveyances show upon their face that the property embraced therein is different from that sued for. The further contention is that said charge is not abstractly true, but if correct is irrelevant, because the deeds referred to refer to the property as the Hamp Brown place, whereas the uncontradicted evidence shows that Hamp Brown owned the entire block, containing about four acres.

(10) In the charge complained of in this ground the court instructed the jury that if they reached the conclusion that the property sued for is not embraced in the conveyances under which the plaintiff claims, they should find for the defendant; but if they found that the land sued for is embraced in those conveyances, then the plaintiff would be entitled to recover, if the defendant does not show a prescriptive title.

(11) In this ground the court instructed the jury that if Frank Brown went into possession of this property in 1902 as a legatee, and not as executor, and if his possession coupled with the possession of Caraker in this case was for a period of seven years or longer, previous to the filing of this suit, Caraker would have a good prescriptive title to the property, although it may have belonged to Katherine Brown at the time of her death. The defendant says this charge is erroneous, because under the uncontradicted evidence Frank Brown went into possession of this property in the year 1902 as legatee, and not as executor.

(12) This ground complains of the admission in evidence of a deed from W. A. Walker to Joseph E. Pottle, dated July 16, 1890, a deed from Joseph E. Pottle to W. A. Walker, dated July 17, 1890, and a deed from W. A. Walker to Katherine Brown, dated October 3, 1890. The objection to these deeds was that they described the property therein conveyed as "all that lot or parcel of land situate, lying, and being in the city of Milledge-

ville, said State and County, known in the plan of said city as part of lot number three (3) in square number twenty-four (24), formerly known as the Hamp Brown place; bounded as follows: by Hamp Brown and others on the north, east and west, and on the south by Saml. Walker; said lot said to contain one-half (1/2) acre, more or less;" that the descriptions in these deeds show that the property therein conveyed is different from that sued for, and that the court should have so instructed the jury.

(13) In this ground it is complained that the court erred in admitting in evidence the disclaimer signed by Hamilton Brown Sr., made in 1878, hereinbefore fully set out.

(14) In this ground it is complained that the court erred in admitting in evidence, over the objection of counsel for the defendant that the same were irrelevant, "the deed from W. G. Lanterman to Jerry Cooper; deed from C. W. Ennis, sheriff, to Saml. Walker; deed from Samuel Walker to C. H. Wright & Son; deed from C. H. Wright & Son to Matthew Brown; and mortgage from Matthew Brown to W. A. Walker, with power of sale."

(15) In this ground the defendant complains that the court erred in admitting in evidence, over his objection "a mortgage from Matthew Brown to W. A. Walker, containing a power of sale." The objection to its admission was that it did not convey or create a lien on the property sued for.

(16) Because the court erred in refusing to admit in evidence, when tendered by the defendant, "a homestead record of Baldwin County, on page 176 thereof, showing a homestead set aside to Hamilton Brown. Said homestead application was sworn to before the ordinary, Feby. 28th, 1874, and was approved by the ordinary of said county on Mch. 12, 1875, and the property surveyed and set apart to Hamilton Brown as a homestead for the benefit of his wife and minor children, including the whole of block No. 24 in the city of Milledgeville, and said block includes the property sued for." The defendant contends that this homestead was relevant because it showed that, during the life of Katherine Brown, Hamilton Brown claimed the property as his own, and that Katherine Brown recognized the property as that of Hamilton Brown, occupied it as beneficiary under the homestead, and that she made no claim or title to any part thereof.

The court overruled the defendant's motion for new trial; and this is the error complained of.

*Allen & Pottle,* for plaintiff in error.

*Sibley & Sibley,* contra.

HINES, J. (After stating the foregoing facts.)

1. None of the headnotes require elaboration, except the fourth, eighth, and ninth grounds.

2. The court construed the disclaimer of title by Hamilton Brown Sr. to apply to lands embracing the premises in dispute. The court instructed the jury that under this disclaimer Brown and those claiming under him would be estopped to assert title against one who acquired title to these premises on the strength of his disclaimer. In this disclaimer Brown, who had undertaken to take out a homestead in lands embracing the premises in dispute, alleged that he was due W. G. Lanterman the purchase-money of these lands, and had given a mortgage on a certain island prior to the homestead act of 1868, to secure the payment thereof. In view of these facts he declared he laid no claim to this property. This disclaimer was under seal, and attested by two witnesses; and was attached to the deed by which Lanterman conveyed this property, for a valuable consideration, to Samuel Walker. Evidently, Brown knew that he could not hold the lands embraced in his homestead against the claim of Lanterman for the purchase-money thereof; and for this reason made this solemn disclaimer of title thereto.

One who silently stands by and permits another to purchase his property without disclosing his title is estopped from subsequently setting up such title against the purchaser. Civil Code, § 4419. His heirs would likewise be estopped. If a person and his heirs can be estopped from asserting title to land under the above circumstances, he and his heirs would certainly be estopped from asserting title thereto when he solemnly enters into a written disclaimer of title upon the strength of which a purchaser buys. This disclaimer of title is tantamount to Brown's joining in the deed from Lanterman to Walker. So the court did not err in charging the jury that Brown and his heirs were estopped from asserting title to these lands, after such solemn disclaimer, against one who purchased for value from Lanterman.

3. The court charged the jury that the muniments of title

under which the plaintiff claimed were sufficient to convey the title to the premises in dispute from the common grantor to the plaintiff's intestate; and this charge is complained of. Both the plaintiff and the defendant claimed under W. G. Lanterman. The plaintiff claimed under mesne conveyances from W. G. Lanterman into Katherine Brown. The first deed under which the plaintiff claimed, being one from W. G. Lanterman to Samuel Walker, was made subsequently to a deed from Lanterman to Hamilton Brown Sr. Whether this charge was correct or not depends upon the force and effect of the disclaimer made by Hamilton Brown Sr., hereinbefore referred to. In essence and effect this disclaimer, made under seal, and attached to the deed from Lanterman to Walker, has the same force and effect as if Brown had joined in the deed from Lanterman to Walker. In this disclaimer Brown admitted that he had purchased the premises in dispute from Lanterman, and had not paid him the purchase-money thereof. Although Brown had undertaken to have these premises set aside, with other lands, as a homestead, the homestead would not be good against Lanterman's claim for the purchase-money thereof. Realizing this, Brown disclaimed title thereto for the evident purpose of enabling Lanterman to convey the land directly to Walker; and this amounts to Brown's so joining in this conveyance as to pass to the vendee of Lanterman the title to the premises in dispute. It may be said that this disclaimer amounted to an estoppel only, and did not convey title. *Thornton* v. *Ferguson,* 133 *Ga.* 825 (67 S. E. 97, 134 Am. St. R. 226); *Coursey* v. *Coursey,* 141 *Ga.* 65, 68 (80 S. E. 462). No prescribed form is essential to the validity of a deed to lands. If sufficient in itself to make known the transaction between the parties, no want of form will invalidate it. Civil Code, § 4182. Very informal instruments, have been held sufficient to pass title. *Horton* v. *Murden,* 117 *Ga.* 72 (43 S. E. 786), and cases cited. When Brown executed this disclaimer and it was attached to the deed from Lanterman to Walker, it was, in effect, the same as if Brown had joined in this conveyance, and was effectual to convey Brown's title to the premises in dispute to Walker, under whom Katherine Brown claimed. So we rule that the court did not err in this charge.

4. The court was requested to charge the jury that the possession of the premises in dispute by the executor of Brown could

be tacked to the subsequent possession of Frank Brown, to whom the premises in dispute were devised under the will of Brown, and to the possession of the vendee of Frank Brown, in order to make out the necessary period of prescription. This the court declined to do; but on the contrary, charged the jury that they could not consider the possession of the executor in determining whether the vendee of Frank Brown had acquired a title by prescription to the premises in dispute. This is the vital point in this case. It is earnestly insisted by the counsel for the defendant in error that the court's ruling in this matter is correct. The argument is that the vendor, after making an absolute deed to lands, can not prescribe against his vendee. Counsel for the plaintiff then asserts that the possession of the executor is that of his testator; and then draws the conclusion, that, as the vendor could not prescribe against the vendee, the executor of the former can not prescribe against such vendee. This would be sound logic, and unanswerable, but for the view which will now be stated. This court has held that possession, remaining with the grantor and never surrendered, is held under the grantee, and is not adverse to his title. *Jay* v. *Whelchel,* 78 *Ga.* 786 (3 S. E. 906). But an explicit disclaimer by the vendor of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee. 2 C. J. 143, § 246. There is nothing in the relation of vendor and vendee by deed executed which will prevent the vendor who may remain in possession from claiming adversely to the vendee. " To say," says the Supreme Court of Vermont, " that the grantor, remaining in possession after his deed, is incapable of committing a disseisin upon his grantee, involves an absurdity too gross almost for argument. He is a mere tenant by sufferance, whom the grantee may elect to treat as a tenant, or as a disseisor. He may bring ejectment, or treat him as an occupier under himself. But if the grantor set up a claim of title in himself, and this be made known to the grantee, the grantor from that time becomes a disseisor in fact, — the grantee can no longer treat him as a tenant." Stevens *v.* Whitcomb, 16 Vt. 121.

The grantor by warranty deed may acquire title against his grantee by adverse possession, and the rule estopping the grantor from setting up after-acquired title does not apply. Chatham

*v.* Lansford, 149 N. C. 363 (63 S. E. 81, 25 L. R. A. (N. S.) 129) ; Abbett *v.* Page, 92 Ala. 571 (9 So. 332) ; Doolittle *v.* Robertson, 109 Ala. 412 (19 So. 851) ; Garabaldi *v.* Shattuck, 70 Cal. 511 (11 Pac. 778) ; Knight *v.* Knight, 178 Ill. 553 (53 N. E. 306) ; McClenahan *v.* Stevenson, 118 Iowa, 106 (91 N. W. 925) ; Bishop *v.* Van Winkle (Ky.), 117 S. W. 345; Zebriska's Succession, 119 La. 1076 (44 So. 893) ; Traip *v.* Traip, 57 Me. 268; Hines *v.* Robinson, 57 Me. 324 (99 Am. D. 772) ; Stearns *v.* Hendersass, 9 Cush. (Mass.) 497 (57 Am. D. 65) ; Kelly *v.* Palmer, 91 Minn. 133 (97 N. W. 578) ; Sherman *v.* Kane, 86 N. Y. 57; Milnes *v.* Van Gilder, 197 Pa. 347 (47 Atl. 197, 80 Am. St. R. 828).

If the grantor can hold adversely to his grantee and acquire title by prescription against his grantee, why can not the executor of the grantor likewise hold adversely to the grantee of his testator and acquire title by prescription, not for himself, but for those whom he represents? The executor represents the devisees and legatees under the will. *Fulghum* v. *Carruthers, 87 Ga.* 484 (13 S. E. 597). It is said by counsel for the plaintiff that the possession of the executor is not in his own right, but in that of his testator, and that for this reason prescription can not be based on his possession. This contention rests upon the principle that "possession to be the foundation of prescription must be in the right of the possessor, and not of another." Civil Code, § 4164. This means that possession must be hostile, and that the possessor can not prescribe against the persons for whom he holds possession. This contention is not sound. The possession of the executor is in his own right as such. He holds the title to the property devised until he assents to the bequests and turns over the land devised to the devisee. So there seems to be no good reason why his possession can not form a link in the chain of possessions from which a prescriptive title will ripen.

If property is conveyed to an active trustee, who holds possession of real estate for the use of the beneficiaries in the trust, his possession would be such as would enable the beneficiaries to tack their possession to his, in order to make out a prescriptive title. The possession of a receiver may be tacked to that of the debtor, and to that of the purchaser of the premises at a sale made under a decree in the case, to make out the full period of the prescrip-

tive term. *Verdery* v. *Savannah etc. Ry. Co.*, 82 *Ga.* 675 (9 S. E. 1133). Here the receiver does not hold possession in his own right, but holds it as an officer of the court, for the benefit of those to whom the property, or its proceeds, may be awarded by the final judgment in the case. If his possession is such as will support a prescription in favor of the owner of the property placed in his hands, why should not the possession of an executor be such as would support a prescription in favor of the devisees under the will of his testator?

Such privity exists between the testator and the devisee as will authorize the tacking of the two possessions to make out the period necessary to acquire title by prescription.

Where the administrator has the legal right by statute to take the possession and control of real-estate, his possession is in privity with that of the intestate, and upon his possession prescription can be based. Cannon *v.* Prude, 181 Ala. 629 (62 So. 24) ; Ricker *v.* Butler, 45 Minn. 545 (48 N. W. 407) ; Fugate *v.* Pierce, 49 Mo. 441; Rowland *v.* Williams, 23 Or. 515 (32 Pac. 402).

If prescription can be based upon the possession of an administrator, to which the subsequent possession of a grantee from him can be tacked in order to make out the prescriptive period, there is no reason why the possession of an executor will not support prescription. The case of the executor is stronger than that of the administrator. Upon the death of an intestate his lands descend at once to his heirs, subject to be administered; but in the case of a will, the property devised or bequeathed does not pass immediately to the devisee or legatee, but the title thereto vests in the executor until he assents to the legacy. No devise or legacy passes the title until the assent of the executor is given to such devise or legacy. Civil Code, § 3895.

In this case Hamilton Brown Sr.; by his will, disposed of the premises in dispute by devising them to his son, Frank Brown. Here was an explicit disclaimer of the title of his vendee, and those claiming under such vendee. His will was probated and recorded. His executor immediately took possession of these premises under this will; and openly and notoriously held possession thereof as such executor and devisee for a period of seven years, and then sold to Caraker, who held possession for something over four years under his deed from the devisee of these premises.

We hold that the possession of the executor can be tacked to that of the vendee of the devisee, to make out the necessary period of prescription.    *Judgment reversed.    All the Justices concur.*