THE GEORGIA PACIFIC RAILWAY COMPANY *v.* DOOLEY.

1. The servant of a railroad company to whom has been delivered a printed copy of its rules governing his conduct as a servant, and who can read and has had sufficient time to become acquainted with them, is bound by every reasonable one which is to govern his conduct while in the service, whether he has read or has knowledge of it or not. But he is not bound by a rule which requires him to waive rights not connected with his duty as a servant, although he know of it, unless he has expressly agreed to it; especially where it requires that the officer employing him shall have it distinctly understood and agreed to by him, and nothing is said to him about it.

2. Evidence as to the road-beds of other railroads in Alabama being inadmissible, qualification of the charge by reference to such other road-beds could not be made.

3. The better practice, where either party so requests, is to detach from the declaration before it is handed to the jury the verdict rendered on a former trial, or in some way conceal it. But it appearing by the affidavits of eight of the jurors (the other four being inaccessible) that the former verdict was not known or read by them until after the present one had been agreed upon and signed, it is the same as though the former one had not been delivered to them.

4. The verdict for $16,044 damages is sustained by the evidence, and is not excessive under the facts.

December 1, 1890.

Master and servant. Railroads. Evidence. Charge of court. Practice. Damages. Verdict. Negligence. Before Judge Marshall J. Clarke. Fulton superior court. March term, 1890.

Action for damages. The plaintiff was conductor of the defendant's freight-train at the time of the injury, which was caused by the cars leaving the track in Alabama, on account of its defective condition. He was in his thirty-third year, was receiving wages of $70 per month, and was stout and healthy. He was thrown out of the caboose to the ground, whereby his heart was displaced, his shoulder was so dislocated that he lost the use of his arm and it is wasting away, his jaw-bone was broken, five of his teeth were knocked out and he cannot close his front teeth to properly masticate his food, his head, side and thigh were cut, and his leg and hand were skinned. The heart displacement impairs its action and prevents proper circulation of the blood, rendering it dangerous for him to engage in manual labor requiring exertion, or in occupations which he followed before the injury. His weight decreased thirty-five pounds. The heart trouble has increased. He cannot earn more than $20 per month. At the first trial, March 20, 1889, the verdict was for $15,000 in his favor; at the second, March 14, 1890,

the jury found for him $16,044. The other facts are reported in the decision.

JACKSON & JACKSON, for plaintiff in error.

HOKE & BURTON SMITH, *contra.*

SIMMONS, Justice.

The controlling question in this case is as to the proper construction and effect of rule 23, which was relied upon by the railroad company to discharge it from all liability to the employee. That rule is as follows:

"The conditions of employment by the company are, that the regular compensation paid for the services of employees shall cover all risks incurred, and liability to accident from any cause whatever, while in the service of this company. If an employee is disabled by accident or other cause, the right to claim compensation for injuries will not be recognized. Allowance, when made in such cases, will be as a gratuity, justified by the circumstances of the case and previous good conduct of the party. The fact of remaining in the service of the company will be considered acceptance of these conditions. All officers employing men to work for this company will have these conditions distinctly understood and agreed to by each employee before he enters the service of the company."

It appears from the evidence that Dooley was employed as flagman on the 21st of June, 1887, and then receipted for a copy of the book of rules and regulations which contained rule 23. He was promoted from the position of flagman to that of conductor, whilst he was in possession of the book of rules. He was familiar with the rule which required employees to know the rules and regulations. The accident happened on August 2d, and he had been in possession of the rule-book about forty-two days. Under this state of facts, the able counsel for the plaintiff in error insisted that as Dooley had receipted for the book of

rules and kept them in his possession up to the time of the accident, and remained in the employment of the company, he thereby assented to rule 23 and as matter of law was bound by it, and that the court should have so charged, instead of leaving it to the jury to say whether he assented to the rule or not.

Under the facts of this case, we do not think the court should have charged the jury that Dooley, on account of this rule, could not recover. It will be seen that the last clause of the rule is: "All officers employing men to work for this company will have these conditions distinctly understood and agreed to by each employee before he enters the service of the company." It affirmatively appears from the evidence that this clause of the rule was not complied with by the officer of the company employing Dooley. Dooley's attention was not called to this specific rule; nothing was said to him about it. Therefore he could not have "distinctly understood and agreed" to it. The object of this clause of the rule was to have each employee make an express contract with the company, waiving his right to recover for any "accident from any cause whatever while in the service of the company." If an express contract to this effect had been made by Dooley, under the common law (which governs this case), it is likely he would have been bound by it; but inasmuch as he made no express contract, we do not think he was bound by the rule.

It is insisted, however, that although he made no express contract, there was an implied contract between him and the company, because the company gave him the rule-book which contained this rule; and as he had time and opportunity to read it and remained in the employment of the company, he impliedly agreed to the rule, and therefore could not recover. We think that wherever a corporation employs a person and gives

him its printed rules governing his conduct as an employee, and he can read and has had sufficient time to become acquainted with the rules of the employer, he is bound by every rule of the employer which is to govern his conduct while in the service, whether he has read the rule or has knowledge of it or not. The employer has the right to make rules for the government of his employees—it is to his interest to do so ; and he has the right to have those rules obeyed. And an employee has no right to violate them and set up as an excuse his want of knowledge of them, after he has had an opportunity to become acquainted with them. He is bound by every reasonable rule which is to govern him in his work or conduct. If one of these rules should require him to couple cars with a stick, and he should undertake to couple them with his hand and in consequence should be injured, he would not be allowed to say that he had no knowledge of the rule. Or if one of the rules should require him to give so many days' notice. before quitting the employer's service, or in default thereof lose his pay, he could not, if he quit the service without such notice, recover his wages because he was . ignorant of the rule. This is the principle upon which the cases cited by counsel for the plaintiff in error were decided. Harmon *v.* Mfg. Co., 35 Maine, 447, 98 Am. Dec. 718, and note; Preston *v.* American Linen Co., 119 Mass. 403 ; Collins *v.* New England Iron Co., 115 Mass. 23 ; Stevens *v.* Reeves, 9 Pick. 197; Bradley *v.* Mfg. Co., 10 Fost (N. H.), 487. It will be seen by reading these cases that the rules, in each one of them, were to govern the conduct of the employee while in the service of the employer, and prescribed penalties for noncompliance. But where the rule requires the employee to waive certain rights which are not connected with his duty as an employee, then in our opinion it does not bind him, although he has knowledge of it, unless

he has expressly agreed thereto.   The fact that he kept
the rules in his possession and remained in the service
of the company would not bar his right to recover, un-
less he expressly agreed to that particular rule.   And
this is especially so in this case, as the rule itself re-
quires that the employee shall distinctly understand and
agree to it.   We think, therefore, that the charges com-
plained of on this point, and set out in the grounds
7, 8, 9 and 9(a) of the motion for a new trial, were more
favorable to the railroad than they ought to have been.

Under the above view, the special exceptions taken
in the 7th and 8th grounds are not material, and would
not, if they were sustained, be cause for reversal.

The error complained of in the 6th ground is that
" the court did not qualify its instruction by reference
to road-beds of other railways reasonably well-conducted
in the State of Alabama"; counsel contending that the
criterion as to what constituted a road-bed in reasona-
bly good condition was the condition of other well-
conducted railroads in Alabama.   The court. could
not have made this qualification without evidence to
predicate it upon, and if evidence had been offered as
to the road-beds of other railways in Alabama, it would
have been inadmissible, as we held in *Railroad Co.* v.
*Chaffin,* 84 *Ga.* 519.

The fifth ground complains that the court erred in
refusing, on motion of counsel for the defendant, to
have the verdict rendered on a former trial detached
from the declaration before the same was handed to the
jury, he insisting that such former verdict would preju-
dice the defendant's case notwithstanding any instruc-
tion which the court might give to the jury on the sub-
ject.   Speaking for myself, I think the trial judge
should have granted this motion.   The general rule is,
that it is a ground for new trial for any paper or writ-
ing to go to the jury and be read by them which is cal-

culated to prejudice or influence them against any of the parties, unless it has been properly admitted in evidence. And I think the verdict of a former jury in the same case might be calculated to prejudice or influence the minds of a succeeding jury, although it had been set aside. It represents the opinion of their twelve predecessors in the same case, that the plaintiff or the defendant is entitled to recover, and when the plaintiff, their opinion also as to the amount of the recovery; and it cannot be denied that the unanimous judgment of twelve upright and intelligent citizens, under oath, sometimes carries great weight, not only with twelve succeeding jurors in the case, but with the community at large. Whether this be sound or not, we all think the better practice is, when either party so requests, to detach, erase or in some way conceal the former verdict, so that the jury cannot know from the papers in the case what that verdict was. Another rule on this subject is, that if a paper or writing calculated to prejudice or influence the jury gets before them illegally, but is not read by them, a new trial will not be granted upon this ground. And the record in this case shows, by the affidavits of eight of the jurors (the other four being inaccessible), that this first verdict was not known or read by them until after the second verdict had been agreed upon and signed by the foreman. This being true, the jury could not have been influenced by the first verdict. If it was not read by them it is the same as though it had not been delivered to them. And substantial justice having been done between the parties, we will not grant a new trial upon this ground of the motion alone. As to papers, writings, verdicts, etc. getting before the jury illegally, and the rules governing the subject, see 2 Thomp. Tr. §§2576, 2580; *Killen* v. *Sistrunk*, 7 *Ga.* 294; *Riggins* v. *Brown*, 12 *Ga.* 271; *Walker* v. *Hunter*, 17 *Ga.* 364; *Lovett* v. *The State*, 60

*Ga.* 258 ; *Wilkins* v. *Maddrey,* 67 *Ga.* 766 ; Harriman
v. Wilkins, 20 Me. 93 ; Green *v.* State, 38 Ark. 313 ;
St. Louis, etc. Ry. Co. *v.* Higgins (Ark.), 14 S. W. Rep.
654.

The motion also complains that the verdict was con-
trary to evidence and excessive. We think there was
sufficient evidence to sustain the finding of the jury.
If the evidence for the plaintiff is to be believed, the
railroad company was very negligent in allowing its
cross-ties to become so rotten as this evidence shows
them to have been. While the verdict is a large one,
the facts of the case show that Dooley was badly and
permanently injured, and that from this injury his heart
has become displaced or enlarged, so much so that he
must be in constant dread of death. An eminent phy-
sician testified that if he were in Dooley's condition, he
would not run a hundred yards for the universe. We
deem it unnecessary to discuss the other grounds of the
motion, because the points made therein are imma-
terial, and would not work a reversal of the case if they
were sustained. 　　　　　　　*Judgment affirmed.*