18544. WESTERN & ATLANTIC RAILROAD *v.* HETZEL, executrix.

DECIDED SEPTEMBER 1, 1928.

*Tye, Peeples & Tye, Seth M. Walker, Neel & Neel,* for plaintiff in error.

*Reubén R. & Lowry Arnold, Fred Mayfield, Paul F. Akin, John T. Norris,* contra.

BELL, J. Mrs. Hetzel, as executrix, brought suit under the Federal employer's liability act against Western and Atlantic Railroad for the homicide of her husband, W. F. Hetzel, alleged to have been caused by the defendant's negligence. After verdict for the plaintiff, the defendant moved for a new trial, and, the motion being overruled, the movant excepted.

The decedent was employed by the defendant as a locomotive engineer. On January 18, 1925, he was operating the engine of a passenger-train en route from Chattanooga to Atlanta, and was fatally injured when his locomotive collided with a landslide of earth and rock which had fallen upon the track in a cut near the station of Hugo, in Bartow county, Georgia. Because of embankments and the curvature of the tracks, the decedent was unable to see the obstruction until it was too late to stop the train and avoid the danger. As to the character and condition of the track and right of way at the place in question, the petition alleged: "The formation of said cut on said side of track at point of said derailment was largely of rock formation and was composed of layers with seams in them which would receive and did receive the water percolating from the surface of the earth, and the said layers of rock on said right side were of a very heavy substance, and sloped downward towards the track and pointed to the track, and the tendency thereof was, if said layers slipped from any cause, that the same would slip towards said track, and, on account of the great height of said cut and its close proximity to the track as aforesaid, the said layers, in case of a slide or fall, would fall directly upon said track and obstruct the same. . . On said right side of the cut the said rock formation did not have any anchorage or toe hold, which anchorage or toe hold in case of breaking of the seams would cause the same to remain stationary, but in the absence of said anchorage or toe hold, when said layers were loosened or cracked by the force of gravity, the same would slide down towards said track, and any vibration or rain or other cause which would tend to loosen up said layers or cause water to percolate between the same or cause cracks or seams to occur in the

same from strain or vibration or other cause would, on account of the natural incline of said layers towards the track, cause them inevitably to pile upon said track and obstruct the same. . . The said layers of rock in such dangerous and close proximity on said right-hand cut of said track sloped at an angle of from 40 to 50 degrees towards said track, which was a dangerous angle, and which, in connection with their weight and their formation into layers, constituted a constant menace to said track as aforesaid. . . Between the layers of rock at said point there were various seams, fissures, crevices, and openings, into which the water falling upon the surface of the earth would naturally tend to percolate, thus rendering larger the seams and openings and in the course of time decrease the power of resistance to slipping. . . The point of said derailment was specially dangerous because the same was approached from the north on a curve, and said curve, in connection with said steep cut and embankment, would prevent the crew on the train from seeing a landslide, should there be one on the track, in time to avoid danger."

It is alleged that the defendant was negligent "in maintaining the side of the cut too close to said track . . and in maintaining the same in too vertical a position;" and *"in all particulars hereinbefore described* [italics ours] in reference to the construction and maintenance of said track, road-bed, cut, embankment and right of way, and that the same at the point of said derailment was dangerous in the particulars hereinbefore described, and that the defendant was negligent in maintaining the same, and that the said landslide occurred because of defendant's failure to exercise ordinary care in the particulars hereinbefore described in the construction and maintenance of said track, roadbed, right of way, embankment and adjacent parts, and had the same not been negligently constructed and maintained, as hereinbefore fully set forth and described, the said landslide would not have occurred, and said rock, debris, and dirt would not have obstructed said track."

■ We can not say that the court erred in refusing a new trial on the general grounds of the motion. The question of whether the defendant was negligent as charged in the petition was a matter of prolonged inquiry in the trial court. The brief of evidence, comprising some 340 pages, is replete with the testimony of various experts and discloses that the evidence was devoted chiefly to that

important issue. Some of these witnesses had not examined the particular location until after the catastrophe, and it is pointed out by counsel for the plaintiff in error that only one of the witnesses who testified for the plaintiff "had seen the cut before the slide," and that even this witness had made no particular inspection of it and was a man with little or no experience in railroad matters.

However, it can not be said, under the record, that the other witnesses had no opportunity for knowing the facts to which they testified, nor that their opinions as experts, based upon subsequent examinations, should have been disregarded by the jury. Besides, numerous photographs picturing minutely the wall of the cut and disclosing in some measure the character of the formations were introduced in evidence, and from these alone the jury could have drawn inferences favorable to the plaintiff upon the question of whether the defendant had exercised reasonable diligence in the maintenance of its track and right of way as respects such conditions. The fact that no landslide had occurred in the particular cut during the space of eighty years, or since the construction of the road, did not conclusively establish the fact that the defendant was not negligent in supposing that one would never occur.

A solution of the question of liability depended mainly upon a knowledge of geology, applied science, and railroad engineering, and, after a careful examination of the case in the light of such little knowledge as we possess touching these matters, we are, in the language of Judge Bleckley (*Oglethorpe Mfg. Co.* v. *Van Winkle,* 54 *Ga.* 569) "unable to make a better verdict for the plaintiff in error than the jury made."

■ The court charged the jury as follows: "Under the provisions of the act of Congress, any common carrier by railroad, where death of any employee occurs, due to injuries, and action is brought therefor against such a common carrier, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damage shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

In the motion for new trial the defendant complains that this charge was erroneous because it authorized the jury to find for the plaintiff regardless of the defendant's negligence, and irrespective of whether the injury resulted from a risk which the decedent as-

sumed. There is no merit in this contention. The court was instructing the jury not upon the question of liability, but upon the effect of contributory negligence by the decedent. The charge was substantially in the language of section 3 of the Federal employer's liability act (U. S. Comp. St., §§ 8657-8665), and was entirely free from the criticism made upon it.

■ In the motion for a new trial error is also assigned upon the following charge of the court: "If the jury finds that the decedent, Mr. Hetzel, was guilty of some negligence which contributed to his death, but that the defendant railroad was also guilty of negligence in some or all of the particulars described in the petition, which likewise contributed partly to the injury, and if the damages on that account are diminished by the jury in proportion to the amount of negligence attributable to such employee, the jury will consider this rule as applicable to the entire charge of the court on the measure of damages." The contention here is that in the use of the clause, "if the damages on that account are diminished by the jury in proportion to the amount of negligence attributable to such employee," and especially by the "if," the court in effect left it to the jury to determine whether they "should or would diminish the amount of damages" awarded to the plaintiff in proportion to the negligence attributable to the decedent, notwithstanding they might find as a matter of fact that the decedent's negligence did conribute to his injury and resulting death.

It is true that if the decedent was contributorily negligent, the damages accruing to the plaintiff should, as a matter of law, be reduced in like proportion, the law being that, where the existence of such contributory negligence is once determined, the making of such reduction will not depend upon the discretion of the jury, but will follow as an absolute legal consequence. However, the charge of the court here under consideration could not have misled the jury to a different conclusion as to this rule of law, the same having been sufficiently explained to them elsewhere in the charge. The point which the court was endeavoring to bring out was that the rule in relation to the diminution of damages should apply to the entire measure of damages or to all elements of damages, should it appear in fact that the decedent was guilty of some contributory negligence.

The judge was doubtless making an effort to rid the case of any

such question as confronted this court in *Western & Atlantic Railroad* v. *Reed*, 35 *Ga. App.* 538 (6) (134 S. E. 134), and the word "if," as used in the clause referred to, was clearly not intended to imply a condition which would leave the matter of reduction wholly to the pleasure or will of the jury, the effect of the instruction being that if the jury should find that the defendant and the decedent were each guilty of negligence contributing to the decedent's death, then, on coming to the matter of reducing the damages, the jury should understand that the rule in reference thereto was to be applied by them to the entire measure of damages or to all elements of damages submitted for their consideration; and this is so plainly true that the jury could not have thought otherwise.

A further ground of the motion complains that the court did not clearly and adequately state to the jury the defendant's plea of contributory negligence, nor sufficiently instruct them as to the law applicable to such plea. An examination of the entire charge discloses that this contention is without merit.

■ The defendant made timely requests in writing for certain instructions, as follows:

(*a*) "I charge you that in order for the plaintiff to recover in this case it is not enough for the evidence to raise in your minds mere surmise or conjecture that there may have been negligence on the part of the defendant. There must be such a preponderance upon the whole evidence in favor of the plaintiff's allegations of negligence on the part of the defendant to justify a conclusion on your part that such negligence existed. The charges of negligence made by plaintiff against defendant in her petition must be proved by the greater weight of the evidence before you can find a verdict in her favor. You have no right to presume negligence on the part of defendant, and if the evidence in this case does not preponderate in favor of plaintiff, then your verdict should be for the defendant."

(*b*) "It is not sufficient for plaintiff to show that defendant may or might, or could have been guilty of such negligence, but plaintiff must show by a preponderance of the evidence that defendant was in fact guilty of such negligence; and if the evidence leaves the matter uncertain, the jury would have no right to act on a mere guess or conjecture as to the existence of such negligence of defendant, and on such guess or conjecture find the defendant guilty

of such negligence and that the same was the real cause of the disaster complained of."

(c) "I charge you that it is your duty to consider the case in all its bearings the same as you would a case between private citizens. The defendant corporation is entitled to the same fair and unprejudiced treatment in a court of law as an individual would be under like circumstances."

(d) "I charge you that the defendant company was not an insurer of the life or safety of the said W. F. Hetzel. The law does not impose upon a railroad company the duty to insure to its employees that the place where they work or carry on the business of the company shall be absolutely safe. The duty of the defendant company to its employees, including the said W. F. Hetzel, as to providing a safe place for them or him to work, would be fulfilled by the exercise of ordinary care on the part of defendant to provide a reasonably safe place for such work as deceased was called upon by his duty as its employee to do under such conditions as it should be reasonably anticipated would exist in the operation of its trains by said Hetzel as engineer thereof in running over the track where the injury is alleged to have occurred."

Several of such requested instructions would have injected into the case issues that, so far as appears from the pleadings or the evidence, were entirely fictitious, and each of them was argumentative. The fact that the highest court in the land may, in discussing some case, have used language similar to that employed by the defendant in one or more of these requests did not make it obligatory upon the trial court to charge the jury as requested. In *Flemister* v. *Central Ga. Power Co.*, 140 *Ga.* 511 (8), 517 (79 S. E. 148), our own Supreme Court, dealing with an assignment of error upon the refusal of the trial court to give to the jury certain requested instructions, said: "The request to charge embodied in the twenty-fifth ground was generally in the right direction, and was doubtless taken largely from Boom Co. *v.* Patterson, 98 U. S. 403 (25 L. ed. 206). It is, however, argumentative in form, which may be meritorious in an opinion of a court of last resort, where a proposition is being supported by reason and authority, but is not desirable when a trial judge is charging a jury, and, under the practice in this State, may amount to positive error." See also: *Bellamy* v. *City of Atlanta,* 75 *Ga.* 167 (1) ; *Caraker* v. *Brown,* 152 *Ga.* 677 (3)

(111 S. E. 51) ; *Griffin* v. *State,* 34 *Ga. App.* 526 (130 S. E. 368).

Assuming that the last sentence of the request designated as *d* above could be construed as stating a correct principle of law, the language was so confused and involved that a jury of laymen would probably never have understood what the principle was. Under the ground of the motion complaining of the court's refusal to give such statement in charge, counsel for the plaintiff in error have taken occasion to discuss the question of whether the duty of the master in reference to the place of work is to use ordinary care to furnish a safe place, or to exercise such care to furnish a reasonably safe place, the contention being that the latter expression is a statement of the true rule.

The Justices of the Supreme Court of Georgia were evenly divided upon the point, presented on certified question in *Otis Elevator Co.* v. *Rogers,* 159 *Ga.* 53 (125 S. E. 60). Upon the return of that case to this court by the Supreme Court without instructions, this court agreed with the view of those Justices who were of the opinion that the master's duty is to exercise ordinary care to furnish a safe place of work, "especially so when applied to the excerpts complained of." *Otis Elevator Co.* v. *Rogers,* 33 *Ga. App.* 181 (125 S. E. 763).

Counsel, in undertaking to sustain the proposition that the duty concurrently and conjointly involves the idea of both ordinary care and the reasonableness of the safety to be provided, have cited several cases decided by the Federal Supreme Court, namely: Hough v. Texas & Pacific R. Co., 100 U. S. 213, 218 (25 L. ed. 612) ; Texas & Pacific R. Co. v. Barrett, 166 U. S. 617 (17 Sup. Ct. 707, 41 L. ed. 1136) ; Patton v. Texas & Pacific R. Co., 179 U. S. 658 (21 Sup. Ct. 275, 45 L. ed. 361) ; Reese v. Philadelphia &c. Ry. Co., 239 U. S. 463 (36 Sup. Ct. 134, 60 L. ed. 384).

A careful examination of each of these cases discloses that in none of them was the question directly presented for decision, but that the court in each instance was speaking in mere general terms of the master's duty, without thought of any such precise or nice distinction as is argued by counsel in their briefs in the case at bar. Perhaps we should qualify this statement to some extent in regard to the Barrett case. In that case the trial judge charged the jury that the plaintiff must show that the injuries sued for resulted from the failure of the master "to exercise ordinary care

either in selecting such engine or in keeping it in reasonably safe repair;" but the court also charged the jury that "a railway company is bound to use ordinary care to furnish safe machinery and appliances for the use of its employees." In passing upon exceptions to the court's charge the United States Supreme Court said: "We think that these instructions laid down the applicable rules with sufficient accuracy and in substantial conformity with the view of this court."

We do not think the defendant's contention as to what would be a correct and exact statement of the duty referred to is necessarily sustained by any of the Federal cases cited, but, regardless of that, we have seen that each and all of the requested instructions were properly.refused for other reasons, and it is therefore unnecessary for this court to make any adjudication in regard to such master and servant rule in the present case. However, the writer, speaking only for himself, is of the opinion that the master is under the duty to exercise ordinary care to furnish a safe place, not merely a reasonably safe place, of work. The duty is not twice or doubly mollified. The master is not an insurer of his servant's safety, it is true, but it seems he should at least exercise ordinary care to do that which an insurer would be bound to do, with respect to such matter. "The duty of a master to use ordinary care to keep his premises and to conduct his business in such manner that his servants may perform their duties in safety is but a phase of the broader and more anciently recognized doctrine of the common law, that every person who expressly or impliedly invites another to come upon his premises or to use his instrumentalities is bound to use ordinary care to protect the invited persons from injury." *Seaboard Air-Line Ry.* v. *Chapman,* 4 *Ga. App.* 706 (2) (62 S. E. 488). The duty to an invitee seems to be to exercise ordinary care to keep the premises safe, not reasonably safe. See, in this connection, *Atlanta &c. Oil Mills* v. *Coffey,* 80 *Ga.* 145 (4 S. E. 759, 12 Am. St. R. 244) ; Civil Code (1910), § 4420.

■ A further excerpt from the court's charge, excepted to in the motion for a new trial, was the following : "This action is brought against the defendant on account of alleged negligence of the defendant, and is based upon a claim of negligence. Negligence is a failure to exercise legally required care. The defendant in this case was required to exercise ordinary care under all of the particulars

as to which negligence is charged in the petition." The assignment of error is directed mainly at the last sentence of this excerpt, the criticism being that it invaded the province of the jury upon the question of whether the acts and omissions characterized by the plaintiff as negligence should be considered such in fact. While the expression under consideration, or the like, is frequently found in charges to juries, we think it is inapt and perhaps confusing. It is not cause for a new trial, however, in the present case. It must have been perfectly plain to the jury, from the entire charge, that the defendant was not liable in the absence of negligence on its part, and that the existence or non-existence of such negligence was a matter for their exclusive determination from the evidence. For instance, the court in other portions of the charge instructed the jury as follows: that the burden was upon the plaintiff to show that the defendant was "negligent in all or some of the ways alleged in the petition, and failed to exercise ordinary care;" that it was for the jury "to decide, under all the evidence, whether a particular state of facts constituted negligence or ordinary diligence;" that if the defendant exercised ordinary care "in the maintenance of its road-bed, cut, bank, track walkers or patrol, and in the ways it is alleged to have been negligent," the plaintiff could not recover; and that if the decedent's death was merely the result of accident, without fault on the part of himself or the defendant, or the defendant's employees, the defendant would not be liable. The court also charged the jury as follows: "The defendant in this case denies that he is guilty of any negligence. If the jury do not believe that the defendant was guilty of negligence in some or all of the particulars described in the plaintiff's petition, plaintiff could not recover; or, if the jury believes there was negligence in some or all of such particulars, but that such negligence did not contribute to the death of the decedent, the plaintiff could not recover. If you believe, under all the evidence and circumstances of the case, that the defendant exercised ordinary care and diligence for the safety of the decedent, the plaintiff could not recover. The defendant sets up in this case that it is not liable because it claims that it was not guilty of any negligence. It claims that any landslide or other obstruction on the track which may have caused the wreck of the engine, which the decedent was driving, occurred from causes beyond its control, and it says, therefore, that not being negligent in

any of the respects alleged in the petition, it is not liable. In considering and deciding this case you should look solely to the evidence for the facts, and to the instructions of the court for the law of the case, and find your verdict accordingly, without any reference as to who is plaintiff or who is defendant. If the jury find, under the instructions given them in this case, that the defendant is not liable to the plaintiff, you would proceed no further in your investigation, and you would return a verdict for the defendant. If, on the other hand, upon applying the law as given you in charge by the court to the facts as you find them, you find that the defendant is liable, it would be your duty to assess the plaintiff's damages in this case."

The excerpt complained of, when considered in connection with the other instructions given, was not calculated to mislead the jury, and hence was not cause for a new trial. *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (13 *b*) (118 S. E. 488) ; *Scarborough* v. *Walton,* 36 *Ga. App.* 428 (2) (136 S. E. 830), and cit.

■ Two. of the special grounds of the motion for a new trial which are specially emphasized in this court are in reference to the court's charge upon the subject of assumption of risk. It is insisted that while the judge gave to the jury certain general instructions upon this subject, he omitted to state the contention of the defendant that the decedent was killed by reason of a risk which he had assumed, and to instruct them that if this was true the plaintiff could not recover.

Assuming that the charge upon assumption of risk was so incomplete that it would have been erroneous, provided there was evidence to raise that issue, it is our opinion that the evidence wholly failed to present any question of assumption of risk for determination by the jury, and, thus, any alleged defects in the court's charge upon such matter were harmless and immaterial.

It appears, from the evidence, that the decedent, throughout a period of many years, had made frequent runs over the particular track, and that in doing so he had had the opportunity of observing the height, slope, and nearness to the track of the embankment in question. According to some evidence it was not unusual for his train to stop at a siding near by; and upon such occasions the embankment stood immediately in front of him and in close view, so that he could have observed the character of the formations thereon.

However, the question of the defendant's negligence or diligence depended upon problems of construction and engineering, falling not within the line of decedent's duty, but solely within the sphere of other departments, and as to which it was the duty of the defendant to exercise a reasonable degree of skill and judgment for the safety of the decedent and other employees, in the operation of its trains. The decedent was entitled to assume that the track and right of way were safe, in the absence of dangers either known or plainly observable by him.

While the evidence authorized the inference that the embankment in question was of such character and in such condition as to endanger the safety of the defendant's employees, and that the defendant was negligent in failing to remedy or guard against the defect, there was absolutely no evidence to indicate that the decedent either knew of such danger or negligence or that the same should have been observable by him. The defect complained of was not an ordinary risk of the employment; and, as to whether the decedent should have assumed the risk of danger from the defendant's negligence considered as an extraordinary hazard, it will be remembered that his duties were to operate his engine under the rules of the company, and not to check or review the work of those responsible for the safe condition of the track and right of way.

In Gila Valley &c. Ry. Co. v. Hall, 232 U. S. 94 (34 Sup. Ct. 229, 58 L. ed. 521), the United States Supreme Court said: "An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated

it." See also, in this connection, Seaboard Air-Line Ry. v. Horton, 233 U. S. 492 (6) (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475); Chicago &c. Ry. Co. v. Ward, 252 U. S. 18 (2) (40 Sup. Ct. 275, 64 L. ed. 430); Boldt v. Pennsylvania R. Co., 245 U. S. 441 (38 Sup. Ct. 139, 62 L. ed. 382); Duffey v. Consolidated Black Coal Corp., 147 Iowa, 225 (2) (124 N. W. 609, 30 L. R. A. (N. S.) 1067); Southern Ry. Co. v. Wessinger, 32 Ga. App. 551 (6) (124 S. E. 100).

We are satisfied that no question of assumption of risk was presented by the evidence and thus hold that no error was committed in the failure of the judge to instruct the jury more fully than he did upon that subject. See further, in this connection, C. & O. Ry. Co. v. Proffitt, 241 U. S. 462 (2) (36 Sup. Ct. 620, 60 L. ed. 1102); Chicago &c. Ry. Co. v. Bower, 241 U. S. 470 (2) (36 Sup. Ct. 624, 60 L. ed. 1107); Union Pacific Ry. Co. v. O'Brien, 161 U. S. 451 (6) (16 Sup. Ct. 618, 40 L. ed. 766); Central Vermont Ry. Co. v. White, 238 U. S. 507 (35 Sup. Ct. 865, 59 L. ed. 1433, Ann. Cas. 1916B, 252); Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672 (18 Sup. Ct. 777, 47 L. ed. 1188); Choctaw &c. R. Co. v. McDade, 191 U. S. 64, 68 (24 Sup. Ct. 24, 48 L. ed. 96); Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 61 (25 Sup. Ct. 164, 49 L. ed. 382). This case is different in its facts from Southern Pacific Co. v. Berkshire, 254 U. S. 451 (41 Sup. Ct. 162).

We will not further prolong this opinion by a detailed discussion of the other grounds of the motion for a new trial. Suffice it to say that we have examined each ground of the motion in the light of the record and of the authorities cited, and it is our opinion that no reversible error was committed. The evidence was amply sufficient to establish liability, and the amount of the verdict ($16,000) was not excessive. The court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*