## 18808. WESTERN & ATLANTIC RAILROAD *v.* LOCHRIDGE.

DECIDED FEBRUARY 7, 1929.

*Tye & Tye, Neel & Neel, Seth M. Walker, Fitzgerald,* for plaintiff in error.

*Hewlett & Dennis, W. C. Martin, Whitaker & Whitaker,* contra.

Jenkins, P. J., being disqualified, Judge Luke, of the first division of this court, participated in his stead.

BELL, J. Mrs. Josephine Lochridge, as administratrix, brought suit against Western & Atlantic Railroad, under the Federal employer's liability act, to recover damages for the use of herself and two minor children for the alleged wrongful death of her husband and their father, John Lochridge, in a collision between two of the defendant's trains, upon the engine of one of which Lochridge was employed as fireman. The defendant demurred generally and specially, the court overruled the demurrer, and exceptions were taken. The trial resulted in a verdict for the plaintiff for $20,000. The defendant moved for a new trial, and, this being refused, the case was brought to this court.

The defendant pleaded two defenses: (1) that the decedent's death was caused solely by his own negligence; (2) assumption of risk.

While the bill of exceptions contains assignments upon the overruling of the demurrer, and the proceedings in regard thereto were sent up in the record, these assignments are not insisted upon in this court, so that the only questions raised for decision are those presented in the motion for a new trial, or in such of the grounds thereof as have not been abandoned.

It is insisted that each of the defenses was sustained by the evidence as a matter of law, so that a verdict should have been directed for the defendant or a new trial granted upon the general grounds.

It is also contended that the judge committed a number of material errors in his instructions to the jury, and that the verdict is excessive.

The train upon which Lochridge was firing was a work train, and was known as No. 383. Besides Lochridge, its crew consisted of L. E. Payne, conductor, H. J. Robinson, engineer, Tomlinson, a watchman, one or two brakemen, and a flagman. This train, with its crew, spent the night of June 18, 1924, at Kingston, Georgia, where in the early hours of June 19 it received orders to leave for Dalton, a station further north, which it did under clearance from the operator at Kingston at 4:50 a. m. of the latter date. The next station north was Hall's, after which was Adairsville. The distance between Kingston and Adairsville was about 10 miles, and Hall's was about half way. The collision, which occurred at 5:06 a. m. about a mile and a half south of Adairsville, was with a regular south-bound passenger-train known as No. 3, which was due to leave Adairsville at 5 a. m., and which did leave at 5:02. Each train was moving at a speed of approximately 35 miles an hour, as though it had a clear track. No fault was attributable to those in charge of No. 3. The only passing point between Kingston and Adairsville was at Hall's, where there was a sidetrack nearly a mile long, with switches at each end. The orders which had been received by the conductor and the engineer of No. 383 did not mention No. 3, which, without mention, was a superior train and ought to have been given right of way. To this end, No. 383 should have taken the siding at Hall's, but it failed to do so, and was thus running on the time of the other train. It had gone about two miles beyond the north switch of the side-track when the collision occurred.

The petition alleged that the defendant was negligent in failing, through its conductor and engineer, to stop No. 383 at Hall's station and to cause it to take the side-track, so as to permit No. 3 to pass, and in failing to give any warning to the decedent of an intention to go on to Adairsville, and not to stop at Hall's. It was also averred that the conductor was in charge of the train, and that he and the engineer, under the defendant's regulations, were responsible for its movements.

There were introduced in evidence certain rules with which Lochridge was presumably acquainted, and among which were the

following: Rule 105. "Conductor has charge of train and of all persons employed thereon, except when his instructions conflict with the rules or involve risk, in either of which case the engineman will be held alike responsible." Rule 106. "Run no risks; in case of doubt take the safe side." Rule 211 (a). "Operators must furnish conductors and enginemen a clearance card, Form A, with all train orders. On passenger trains, conductors must show all train orders to flagmen, and enginemen must show to firemen. On other trains, conductors must show to rear brakemen and enginemen must show to firemen and front brakemen." Rule 522. "Closely observe train signals; read train orders, keep them in mind, and should there be occasion to do so, remind engineman." Rule 523. Fireman shall "Call to engineman the indication of fixed signals as they come into view. Notice especially switch targets and lights which may not be visible to him." Rule 524. Firemen shall familiarize themselves "with the train rules, special instructions, signals and train orders, and assist engineman in their observance. Understand the rule for the protection of trains and be prepared to execute them when required." Rule 526. Fireman shall "So regulate fire as to be able to keep a lookout while passing through stations and approaching road crossings."

The evidence showed that to a point a short distance north of Hall's the engine would have needed firing in the usual manner, the track being mostly up-grade; thence to the place of the wreck the incline was downward, and firing would have been unnecessary. As the train passed a house between Kingston and Halls, certain women came out and waved, apparently in response to the continued blowing of the whistle in that vicinity. This was south of the south switch of the side-track, and there was no evidence that Lochridge participated in any greetings that may thus have been exchanged. A witness who lived north of Hall's station testified to having seen Lochridge "laying" out of the window looking ahead. The train was then about even with the north switch of the side-track. Except as above stated, the evidence was silent as to what Lochridge may or may not have done after leaving Kingston.

There was testimony as to the receipt at Kingston by the conductor and the engineer of the orders with respect to the movement of No. 383, but there was no positive evidence that any of these orders ever came into the hands of Lochridge or were read to him

by the engineer or any one else. However, for the purposes of this case it will be assumed that he knew or should have known that train No. 3 had right of way and that it was the duty of No. 383 to take the siding. There was no evidence to show why it was driven on in violation of the rules and orders. R. A. Reagin, flagman, and the only member of the crew of that train who testified, could upon that question merely say that No. 3 was overlooked or forgotten and this appears to have been a bare conclusion. Five orders were received by the conductor and the engineer, during the night and early morning, prior to their departure, and there is some room for conjecture that these orders might have been misinterpreted, although for the purposes of this case it will be taken for granted that they should not have been, the defendant so contending.

Riding upon the engine with Lochridge and Robinson, the engineer, was Tomlinson, the watchman, and all of them were instantly killed. All other members of the crew except flagman Reagin were either inaccessible or unaccounted for at the trial.

There was no other evidence so material here as to require mention in this statement.

■  It can not be said as a matter of law that Lochridge's death was brought about solely by his own negligence, even assuming that he was negligent as claimed by the railroad company. It is undisputed that the conductor and the engineer were both negligent, and they were the ones primarily responsible for the movement of the train. To put the case most strongly for the railroad company, the negligence of Lochridge was only contributory and could not be considered the sole cause. If his death resulted in whole or in part from the negligence of the other employees, the defendant is liable under the specific provisions of the statute.

In Illinois Central R. Co. v. Skaggs, 240 U. S. 66 (36 Sup. Ct. 249, 60 L. ed. 528), it was held that a recovery under the Federal employer's liability act was supported by evidence by which it could be found that a fellow servant was negligent, and that thereby the injury complained of resulted, although the injured employee may himself have participated in the act which caused the injury. In such a case the fact that the injured employee was himself guilty of negligence contributing to the injury does not bar a recovery, but the damages are to be reduced by the jury in proportion to the .

amount of negligence attributable to him. See also Norfolk & Western Ry. Co. *v.* Earnest, 229 U. S. 114 (33 Sup. Ct. 654, 57 L. ed. 1096).

It is claimed for the railroad company that if Lochridge had been in the discharge of his duty, he would have called the attention of the engineer to the switch targets and would have "reminded him" of the necessity of taking the siding, and that the company "was entitled to expect that self-protection from its employees." Language similar to this was used by the United States Supreme Court in Chesapeake & Ohio Ry. Co. *v.* Nixon, 271 U. S. 218 (46 Sup. Ct. 495, 70 L. ed. 914), and that case is cited as authority. However, in that case the only person negligent was the employee for whose death the action was brought.

In at least two cases the Supreme Court has held that no recovery could be had for the death of an engineer who was killed under circumstances similar to those of the present case. Davis *v.* Kennedy, 266 U. S. 147 (45 Sup. Ct. 33, 69 L. ed. 212) ; Frese *v.* Chicago, Burlington & Quincy R. Co., 263 U. S. 1 (41 Sup. Ct. 1, 68 L. ed. 131). In each of those cases the negligence of the engineer was regarded as the sole cause of his death, despite the fact that the fireman or other employee may have been negligent also, and it would seem to follow that in such a case the negligence of the fireman, a subordinate employee, should not be considered as more than a contributing cause.

Certainly the evidence in this case did not demand the inference that the death of fireman Lochridge was caused solely by his own negligence. Therefore the first of the defenses can not be held established as a matter of law. Compare Union Pacific R. Co. *v.* Hadley, 246 U. S. 330 (38 Sup. Ct. 318, 62 L. ed. 751) ; Unadilla Valley Ry. Co. *v.* Caldine, 278 U. S. 139 (49 Sup. Ct. 91).

■ Under the facts appearing, the question as to assumption of risk is more difficult. Did Lochridge assume the risk arising from the negligence of the conductor and the engineer? If so, this was a complete defense, and the court should have directed a verdict for the defendant, or, after verdict for the plaintiff, should have granted a new trial on the general grounds.

Such negligence on the part of the decedent's fellow servants was not a risk which he assumed, unless he became aware of it

and of the dangers arising therefrom, or unless such negligence and its probable consequences were so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them, and the decedent failed to take proper steps to avoid acquiescence therein. Gila Valley &c. Ry. Co. v. Hall, 232 U. S. 94 (4) (34 Sup. Ct. 229, 58 L. ed. 521). Any participation by the decedent in the violation of the company's rules and orders would be referable to the question of negligence, and not to that of assumption of risk, unless as a circumstance upon the latter question. In the absence of special contract the company could not say, by rule or otherwise, just what should be done by an employee to discover the negligence of a fellow servant, or to avoid assuming the consequences thereof if and when discovered. As to this the law would control, having in view all the circumstances. *Georgia Pacific Ry. Co.* v. *Dooley,* 86 *Ga.* 294 (12 S. E. 923, 12 L. R. A. 342) ; Oberlin v. Oregon, W. R. & N. Co., 71 Ore. 177 (4) (142 Pac. 554).

That the negligence of the conductor and the engineer, with its probable or certain consequences, was known or should have been known to Lochridge, the fireman, can hardly admit of question. What, then, was he to do? In Seaboard Air-Line Ry. v. Horton, 233 U. S. 492, 504 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1), the Supreme Court said: "When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise." See, in this connection, 3 Labatt's Master & Servant (2d ed.), §§ 1201 (e), 1216.

In the present case, complaint or objection with an "assurance" of safety could not reasonably have been satisfying, because the danger was so imminent that no person of ordinary prudence could have felt safe in relying upon such assurance. On the other hand,

if Lochridge made complaint and it proved ineffectual, he still could not have been expected necessarily to leave the company's service, certainly not the train, for that probably would have meant instant death, and the alternative of remaining upon it, in the hope that by some chance the danger would be averted, could in common prudence have been thought to be the wiser course. In Baltimore & Ohio R. Co. *v.* Baugh, 149 U. S. 368 (13 Sup. Ct. 914, 37 L. ed. 772), an engine known as a "helper," after helping a freight-train to the top of a grade about 20 miles 'from its station, was returning against rules, and in a collision with another train Baugh, the fireman, was injured. He sued the railroad company for damages and recovered. The case was carried to the United States Supreme Court, where it was held that the plaintiff, in voluntarily riding upon the engine with full knowledge of his peril, assumed the risk. Baugh, however, lived to tell the story; while in the present case the fact was that all of those who were riding upon the engine, including Lochridge, were killed, and there was no conclusive evidence as to his conduct *after his departure from Kingston.* There was no evidence to demand the inference that he did not call the attention of the engineer to the fixed signals such as switch targets and lights, and otherwise assist and remind the engineer as required by the rules. He may have endeavored to have the train take the siding and wait, with the result that he was overruled. Nor can it be said absolutely, from the evidence, that he did not then and thereafter protest or complain against the danger of going ahead.

True, it may be supposed that if this had been done the engineer would have responded and acted differently. The fact that the engineer continued to drive his locomotive on until it collided with the other train is the strongest circumstance in favor of the proposition that Lochridge failed to do or say anything to cause a reversal of the engineer's conduct. The engineer, however, was grossly culpable in failing to take the siding upon his own initiative, and it could have been inferred that he further violated the rules in failing to read the train orders to his fireman. In these circumstances might it not have been inferred that he either misconstrued the rules and arbitrarily refused suggestion from another, or that for some reason he calculated that he could reach the next station in safety *and was determined* to do so?

In Virginian Ry. Co. *v.* Linkous (C. C. A), 230 Fed. 88, the facts were almost identical with those of the case at bar, except that in that case the suit was to recover for the death of the engineer. The trial judge submitted to the jury the question of whether there was negligence on the part of the other employees, contributing to the decedent's death, that is, of whether the death of the engineer resulted in part from the negligence of other employees within the meaning of the employer's liability act. After verdict for the plaintiff, the defendant carried the case to the Circuit Court of Appeals, assigning error upon the charge of the court and upon the refusal of the court to direct a verdict in its favor. In reviewing the case as thus made and in reversing the judgment of the court below, the Court of Appeals said: "Save the fact that they were on the engine at the time plaintiff's decedent was killed, there is not a word of testimony as to what was said or done by the other employees prior to or at the time of the accident. Therefore it could only be by inference, if at all, that the jury might form any opinion as to what actually transpired in so far as the conduct of the other employees is concerned. Under these circumstances, what is the reasonable inference to be drawn therefrom? Could it be reasonably inferred that the conductor or any other employee on the engine approved of or assented to the action of the engineer in running his engine past the station in utter disregard of the orders under which he was operating? Would it not be more reasonable to infer that the conductor and other employees did not consent to the train being carried by the station, but rather protested against the action of the engineer for the purpose of saving their own lives, if for no other cause. When last seen, the engineer and the other employees were in the full possession of their mental faculties in so far as the record shows, and therefore the presumption is that they were still in a normal condition at the time the collision occurred, and if this be true it would be repugnant to reason to say that they acquiesced in a course of conduct by the engineer which they must have known would necessarily result in disaster. Therefore, if this be the correct inference to be drawn from the testimony, the plaintiff's decedent did not lose his life on account of the negligence of the officers, agents, or employees of the defendant, and therefore the plaintiff would not be entitled to recover."

In Looney v. Metropolitan R. Co., 200 U. S. 480 (26 Sup. Ct. 303, 50 L. ed. 564), it was said by the United States Supreme Court: "If there is no evidence which speaks one way or the other with reference to contributory negligence of the person killed, then it is presumed that there was no such negligence." While in each of the two cases last cited the court, in the language quoted, was speaking of the sufficiency of evidence to show negligence on the part of employees, the reasoning of both of these cases would apply equally in determining the question of assumption of risk, where the record fails to show any "evidence which speaks one way or the other" upon the subject.

Assumption of risk is a matter involving choice (Brown v. Rome Machine Co., 5 Ga. App. 142 (5), 62 S. E. 720; Emanuel v. Georgia & Florida Ry. Co., 142 Ga. 543, 83 S. E. 230), and in the instant case the evidence did not demand the inference that Lochridge voluntarily elected to ride upon the engine with knowledge of the danger, as was true in the Baugh case, supra. The burden of establishing assumption of risk as a defense rested upon the railway company (Central Vermont Ry. Co. v. White, 238 U. S. 507 (3) (35 Sup. Ct. 865, 59 L. ed. 1433, Ann. Cas. 1916 B, 252), and before this defense may be held proved as a matter of law, the evidence "to show such assumption must be clear and uncontradicted." Chesapeake & Ohio Ry. Co. v. Winder, 23 F. (2d) 794; Kanawha & Michigan Ry. Co. v. Kerse, 239 U. S. 576 (2) (36 Sup. Ct. 174, 60 L. ed. 448). Compare Western & Atlantic R. v. Hetzel, 38 Ga. App. 556 (6) (144 S. E. 506). The evidence in the present case did not measure up to this standard, and the question was one for the jury. The record does not make it necessary to determine whether there was absolutely no sufficient evidence to have authorized a verdict in favor of such defense, and we do not rule upon that question. What we hold is that there was no conclusive evidence upon the subject, and thus that the defendant did not carry the defense beyond the jury as a matter of law. It follows from what has been said above that the court did not err in overruling the motion to direct a verdict in favor of the defendant, nor in thereafter refusing to grant a new trial upon the general grounds.

■ The court charged the jury as follows: "In order for the plaintiff to recover in this case, she must establish her contentions

to your satisfaction by a preponderance of the evidence. By a preponderance of the evidence is meant that superior weight of the evidence upon the issues involved, which while not sufficient to wholly free the mind from a reasonable doubt, is yet sufficient to incline the mind of a reasonable and impartial person to one side of the issue rather than to the other." It is complained that this charge was error because, to instruct the jury that evidence would be sufficient although it might merely have inclined the mind to one side of the issue rather than to the other, violated the Federal rule as to the quantum of proof necessary, and recognized instead the scintilla evidence rule, which has been repudiated by the United State Supreme Court. A. B. Small Co. v. Lamborn, 267 U. S. 248 (45 Sup. Ct. 300, 69 L. ed. 597); Chicago &c. Ry. Co. v. Coogan, 271 U. S. 472 (46 Sup. Ct. 564, 70 L. ed. 1041). This charge, however, spoke of the "superior weight" of the evidence, and the portion excepted to was in the language of our Civil Code, § 5731. The definition of preponderance of evidence as there given is in accord with the common acceptation. 23 C. J. 12. The instruction did not authorize a recovery in the absence of evidence to establish the issues in favor of the plaintiff beyond the realm of speculation and conjecture. It may be remarked in this connection that the scintilla evidence rule has no more recognition in this jurisdiction than in the Federal courts. *Georgia &c. Ry. Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076); *Smith* v. *Atlantic Coast Line R. Co.*, 5 *Ga. App.* 219 (2) (62 S. E. 1020); *Southern Ry. Co.* v. *Wessinger*, 32 *Ga. App.* 551 (7) (124 S. E. 100).

■ In one ground of the motion for a new trial error is assigned upon the following charge of the court: "I charge you that the plaintiff's petition, as amended, alleges that between Kingston, Georgia, and the point of the wreck, that the deceased Lochridge was constantly engaged in firing the engine of work train 383, immediately in front of the fire-box upon said engine, and from which position he was unable to keep a lookout, and could not see." It is contended that the allegations referred to were not supported by the evidence, and for that reason should not have been stated in charge to the jury, the judge having further told the jury that he had not undertaken to state the contentions of the parties in full, but that they would have the pleadings out with them and might refer to these as often as they saw fit, "to ascertain exactly what

those contentions are." There is no merit in this ground of the motion. The judge was merely stating contentions, and this must have been obvious to the jury. He further instructed them that pleadings were not evidence, and that in order for the plaintiff to recover she must establish her contentions by a preponderance of the evidence. The petition was properly in the hands of the jury during their deliberations; and since the jury thus had the right and privilege of reading it, there could not have been very serious error in the fact that the judge had read it to them; the more especially is this true since the averments in question were not in regard to a vital issue in the case. So, even assuming that the allegations were not proved and that it was for that reason improper to state them in charge, the error in so doing was not such as to require a new trial. *White* v. *Knapp,* 31 *Ga. App.* 344 (7-a) (120 S. E. 796).

■ Complaint is also made of the following charge of the court: "I charge you that where an engineer, fireman, conductor and other members of the train crew are shown to have been operating a train, and a wreck occurs, there is no presumption that either of them is without fault. I charge you that the law presumes that every man, in his private and official character, does his duty until the contrary is shown." The error assigned is that this charge was incorrect, contradictory, and confusing, and without evidence to support it, such grounds of error being more fully specified in the motion for a new trial. Irrespective of whether fault on the part of the employees might be inferred from the happening of a wreck (*Parrish* v. *Central of Georgia Ry. Co.,* 36 *Ga. App.* 133 (3), 135 S. E. 762), in such a case there would be no presumption that the company's servants were "without fault." Upon that proposition the charge appeared to state a truism, and it applied equally and interchangeably to the conduct of the decedent and to that of the other employees.

But even assuming that the first statement in the above excerpt contained an implication or negative pregnant to the effect that in the circumstances referred to there would arise a presumption that the employees were negligent, which is not the law applicable in a case under the Federal employer's liability act, the statement was still without error as against the railway company. If this be the proper construction, the company was benefitted rather than

harmed, because its chief contention both in the trial court and in this court has been that not only the fireman, but the conductor and the engineer as well, were each guilty of negligence of the grossest character, and that for this reason the plaintiff was not entitled to recover. Hence, if the charge may be interpreted as intimating that the law would raise a presumption of negligence against the company upon proof of certain facts, to that extent it tended to help the defendant in the establishment of the defenses asserted, and could not have been prejudicial to that party. The latter portion of the charge wherein the jury were told that the law presumes that every man in his private and official character does his duty until the contrary appears, was a correct statement of the law, and was not subject to any of the exceptions taken. *Akin* v. *Alatoona Iron Works,* 43 *Ga.* 464 (2); *Nicholson* v. *Spencer,* 11 *Ga.* 607, 611; *English* v. *Poole,* 31 *Ga. App.* 581 (4) (121 S. E. 589). The rule as thus declared in no sense runs counter to the provisions of the liability act, and in the present case it could properly have been considered by the jury in determining several issues of fact as to the conduct of Lochridge and also of the engineer. In *Terry* v. *Rodahan,* 79 *Ga.* 279 (3) (5 S. E. 38, 11 Am. St. R. 420), cited for the plaintiff in error, there was no evidence to warrant such a charge. The way in which the different propositions of the above charge were brought together may have tended to obscurity or even to self-contradiction, but, this granted, neither of such imperfections afforded cause for a new trial under the facts and issues in this case.

■ Error is also assigned upon the following charge: "You are instructed that the present cash value of the future benefits [of] which the beneficiaries were deprived by the death of the decedent, making adequate allowance according to the circumstances for the earning power of money, is the proper measure of damages in an action of this character. It is a question for the jury to decide, under all the circumstances of the case, and under all the conditions which might be present, as to what rate of interest you would use in making a discount of the future value of the decedent's life to his wife and children to its present cash value. Local conditions are not to be disregarded, nor should the discount necessarily be at the legal rate of interest. It is a matter for the jury to decide as to what the earning power of money is, and the rate to be fixed is a

matter for you to determine. The plaintiff would be chargeable with such a rate of interest as she could secure by ordinary diligence. In reducing these sums to their present cash value, you may use any proper mathematical method for determining that question." The exception is that there was no evidence of the "local conditions not to be disregarded," nor as to the capacity of the plaintiff for investing and caring for money, nor as to its earning power in the vicinity where it might be invested. Except for the fact that the plaintiff was made accountable for ordinary diligence in investing the funds, the instructions complained of were in substantial accord with the decision of the United States Supreme Court in Chesapeake & Ohio Ry. Co. *v.* Kelley, 241 U. S. 485 (36 Sup. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367), a case which has been followed by this court in *Central of Georgia Ry. Co.* v. *Goens,* 30 *Ga. App.* 770 (7) (119 S. E. 669), and in *Western & Atlantic R.* v. *Townsend,* 36 *Ga. App.* 70 (7) (135 S. E. 439) ; and we do not think the charge was erroneous upon the grounds stated.

Although in the later case of Gulf &c. Ry. Co. *v.* Mosler, 275 U. S. 133 (48 Sup. Ct. 49, 72 L. ed. 200), the Supreme Court held that in awarding damages under the Federal employer's liability act the jury must determine the present value of the pecuniary loss calculated as bearing interest at the highest net rate that can be had on money safely invested, this ruling was merely to reverse the refusal of a requested instruction which implied that the testimony had shown something as to the earning power of money, and there was in that case no adjudication that evidence upon the subject was necessary. It would seem that if the jury could not ascertain the proper reduced result without the aid of evidence upon the question, the production of such evidence should be the burden of the defendant, since its right to the reduction would partake of the nature of a partial defense which the plaintiff ought not to be called upon to make out. See, in this connection, *Walker* v. *Jenkins,* 32 *Ga. App.* 238 (4) (123 S. E. 161), and cit. The Mosler case, supra, cited and followed the Kelley case and did not purport to change the rule as therein laid down. It simply sustained the right of the railroad company to obtain by request a specific application of the general rule announced in the Kelley case. The jury were instructed that the plaintiff "would be

chargeable with such a rate of interest as she could secure by ordinary diligence." The railroad company certainly could not expect the adoption of a higher standard than that of a person of ordinary prudence, and upon that point the rule which the court stated was as favorable to the defendant as it should have been, even if it did not actually amount to error against the plaintiff. Interest rates and other forms of returns on money safely invested are matters of such common knowledge that intelligent jurors may be presumed to be able to make proper allowance therefor in estimating the present value of a sum of money payable in the future, though no evidence upon that subject is introduced. The instructions complained of gave the proper measure of recovery in a case of this sort, and were not erroneous either as being unsupported by the evidence or as not stating correctly the rule to be followed in arriving at the proper result. See further, in this connection, *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 571 (5) (84 S. E. 69); *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (16) (118 S. E. 488); *Southern Ry. Co.* v. *Woodward,* 39 *Ga. App.* 173 (3).

■ We can not say as a matter of law that the verdict was excessive. The decedent was earning $250 per month and appeared to be in line for promotion. He was 44 years of age, in good health, and had the ordinary expectancy. His wife was younger and had at least an equal expectancy. The evidence shows that he contributed $200 per month to the benefit of the family, and while this was in part for the use of himself as a member of the household, his personal expenses were mostly paid out of the remaining portion of his salary. Besides this, there was some evidence that the decedent rendered to the two children, aged 12 and 16, respectively, services of a stated monthly value, and this fact could have been considered in determining the amount of the verdict. See *Western & Atlantic R.* v. *Townsend,* 36 *Ga. App.* 70 (supra). Even if the jury could have concluded that the decedent's own negligence contributed to his death, it was still their province, under the evidence, to determine the extent of such contribution. They could have found that at least three other employees were negligent also, two of whom were primarily responsible for the train's movements. Again, the death occurred more than three years before the trial under review, and the jury were authorized to add something for the earning power of money in the meantime.

The above will dispose of all grounds of the motion for a new trial that have not been abandoned, except ground 8, which is controlled adversely to the plaintiff in error by *Western & Atlantic R. v. Hetzel,* 38 *Ga. App.* 556 (3) (144 S. E. 506). See also Norfolk & Western Ry. Co. *v.* Earnest, supra. The court did not err in refusing a new trial.

*Judgment affirmed. Stephens, J., concurs. Luke J., dissents.*

LUKE, J., dissenting. Under the facts presented by the record in this case I can not agree to the judgment of affirmance. The husband of the plaintiff, along with his superior officer, the engineer, was under a duty to protect himself and his fellow servants. Both he and the engineer disobeyed the rules of the company and disregarded the rules of self protection. The danger to his own life was obvious, and his death was the result of his own lack of ordinary care. The railroad company, as a matter of right, should not be required to compensate for the death of this man, of which he, by reason of his negligence, was the author.